Deborah Delaine **PRESLEY,**
Plaintiff–Appellant,

v.

Joseph A. **HANKS,** Priscilla B. Presley and National Bank of Commerce, co-executors Estate of the Estate of Elvis A. Presley, Deceased, Defendants–Appellees.

Court of Appeals of Tennessee,
Western Section,
at Jackson.

July 20, 1989.

Application for Permission to Appeal Denied by Supreme Court Nov. 6, 1989.

Edmund W. Turnley, III, Nashville, for plaintiff-appellant.

C. Barry Ward, Memphis, for defendants-appellees.

CRAWFORD, Judge.

This is a will construction case. On February 18, 1988, appellant, Deborah Delaine Presley, acting pro se, filed a petition in the probate court entitled "Petition To Determine Heirship And For Share Of Estate Under Will Heretofore Admitted To Probate." In essence, the petition alleges that

petitioner is the illegitimate daughter of the testator, Elvis A. Presley, and pursuant to the terms and provisions of his Last Will and Testament, she, as his daughter, is entitled to a share of the estate.

The Answer of the co-executors, Joseph A. Hanks, Priscilla B. Presley and National Bank of Commerce, filed September 23, 1988, denies the material allegations of the complaint and joins issue thereon. The Answer specifically avers that the decedent's will expressly excludes petitioner as a beneficiary. On the same date, the co-executors also filed a motion for summary judgment asserting that the express language of Elvis Presley's will manifests his intent "that only those children born in lawful wedlock to Mr. Presley are entitled to inherit from and through him, and that Lisa Marie Presley" is the only such child.

The motion for summary judgment was supported by the affidavit of Priscilla B. Presley and D. Beecher Smith, II. The Presley affidavit asserts that Elvis Presley was married only once in his lifetime and that was to the affiant. The affidavit further states that the daughter of the affiant and Elvis Presley, Lisa Marie Presley, is the only child born to Elvis Presley during a lawful marriage.

Smith's affidavit states that pursuant to Elvis Presley's instructions, he prepared the Last Will and Testament in question. Affiant further states that Mr. Presley had previously successfully defended a paternity suit in California and was cognizant of the need to specify in his will those he wanted to take thereunder.

Appellant's affidavit, filed November 7, 1988 in response to the motion for summary judgment and supporting affidavits, states that she received a late notice of the filing of the summary judgment motion, and then on November 3, 1988, received a letter from the estate's attorney notifying her of the time for a hearing on the motion for summary judgment. She further avers in her affidavit that she has been unsuccessful in obtaining an attorney to represent her, and that she needs additional time before the hearing on the motion for summary judgment in order to obtain an attorney. Appellant also filed affidavits from her mother, Barbara Jean Young, and from Gene Smith, purportedly Elvis Presley's first cousin. These affidavits, in general, establish the relationship between appellant's mother and Elvis Presley in support of appellant's claim that Mr. Presley was her father.

The memorandum opinion of the probate judge filed November 29, 1988 recites that it is premised on "the sworn petition of Deborah Delaine Presley; Estate's Motion for Summary Judgment, Answer and Memorandum in Support thereof; argument of Counsel for the Estate and argument of Petitioner, who was not represented by Counsel; and the entire record in this Cause." Basically, the probate judge found that appellant failed to establish that she was the daughter of Elvis Presley, and further construed the Presley will to exclude illegitimate children as beneficiaries. The memorandum opinion was incorporated in the order entered November 29, 1988, which granted summary judgment and dismissed appellant's petition.

On December 29, 1988, appellant, through counsel, filed a "Motion to Reconsider Order Granting Summary Judgment." A hearing was held on this motion December 30, 1988, and an order was entered the same date denying the motion, resulting in this appeal.

Appellant presents six issues for review which we will now consider. Issues I, II and III will be considered together. These issues, as set forth by appellant in her brief, are as follows:

I. Whether the court erred in failing to set aside the summary judgment granted to the estate against the petitioner, Deborah Delaine Presley, in order to allow the petitioner to have legal counsel represent her?

II. Whether the court's memorandum opinion and order granting summary judgment to the estate was overly broad and encompassed issues not presented to the court by the estate's motion for summary judgment?

III. Whether the court's finding that it was legally impossible for appellant to

claim any interest in the testator's estate due to the fact that appellant could not be legitimated was clearly erroneous?

■ Appellant asserts that the probate judge should have continued the hearing on the motion for summary judgment to allow her to obtain counsel. The record does not reflect when the hearing on the motion was held, but the record does reflect that appellant filed her petition on February 18, 1988, the motion for summary judgment was filed September 23, 1988, and the order granting summary judgment was entered November 29, 1988.

■ There is no absolute right to counsel in a civil trial. *Barish v. Metropolitan Gov't.*, 627 S.W.2d 953 (Tenn.App. 1981). The trial court has broad discretion in the grant or denial of a continuance and the trial judge's decision will not be set aside unless there is a clear showing of abuse. *Barish, supra.* From the record before us, we can find no such clear showing of abuse. However, as a practical matter, it appears that appellant's real complaint regarding these issues is the scope of the probate judge's findings in his memorandum opinion. Appellant's counsel argued in the motion to reconsider, and argues in this court that the probate judge's finding that appellant is not the daughter of Elvis Presley was not an issue to be decided on the motion for summary judgment. We agree with appellant's counsel. The motion for summary judgment, as well as the memorandum in support of the motion for summary judgment, explicitly established that the only question presented by the motion for summary judgment "is whether Elvis Presley's Will makes provision for inheritance by an individual who contends she is the illegitimate daughter of Mr. Presley." Furthermore, the affidavits supporting the motion for summary judgment did not in any way dispute appellant's claim in her petition that she was Mr. Presley's illegitimate daughter. Appellees' entire thrust on their motion for summary judgment was that a proper construction of the will reveals that an illegitimate child is not a beneficiary. The probate judge stated in his memorandum opinion:

When a motion for summary judgment is made, an adverse party may not rest upon the mere allegations of her pleading, but her response, by affidavits or otherwise, must set forth specific *facts* showing that there is a genuine issue for trial. If she does not so respond, summary judgment, if appropriate, shall be entered against her. (emphasis in original).

We disagree with the probate judge's statement of the law. The controlling authority, Rule 56.05, Tennessee Rules of Civil Procedure, states as follows:

**56.05. Form of Affidavits—Further Testimony—Defense Requited.**—Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. *When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.* (emphasis added).

As previously noted, the motion for summary judgment filed by the co-executors of the Presley estate was not supported by any sworn proof concerning the parentage of appellant. Accordingly, appellant was under no obligation to set forth any specific facts in response thereto "showing that there is a genuine issue for trial." The record is clear that appellees, for the purpose of the summary judgment motion only, conceded that appellant is the testator's illegitimate daughter.

We also note that there is nothing in the appellees' supporting affidavits which would require appellant to set forth any specific fact concerning her ability to be declared the legitimate child of Elvis Presley. Therefore, the finding of the probate judge that appellant is not the daughter of Elvis Presley, and the finding of the probate judge that it is legally impossible for appellant to be determined a legitimate child of Elvis Presley should be vacated, and the order modified accordingly.

The next issue for review which encompasses appellant's Issues IV and V is whether the probate judge erred in his construction of the decedent's will.

The dispute in this case involves Item IV of Elvis Presley's will which is as follows:

### ITEM IV

#### *Residuary Trust*

After payment of all debts, expenses and taxes as directed under ITEM I hereof, I give, devise, and bequeath all the rest, residue, and remainder of my estate, including all lapsed legacies and devises, and any property over which I have a power of appointment, to my Trustee, hereinafter named, in trust for the following purposes:

(a) The Trustee is directed to take, hold, manage, invest and reinvest the corpus of the trust and to collect the income therefrom in accordance with the rights, powers, duties, authority and discretion hereinafter set forth. The Trustee is directed to pay all the expenses, taxes and costs incurred in the management of the trust estate out of the income thereof.

(b) After payment of all expenses, taxes and costs incurred in the management of the trust estate, the Trustee is authorized to accumulate the net income or to pay or apply so much of the net income and such portion of the principal at any time and from time to time for the health, education, support, comfortable maintenance and welfare of: (1) my daughter, Lisa Marie Presley, and any other lawful issue I might have, (2) my grandmother, Minnie Mae Presley, (3) my father, Vernon E. Presley, and (4) such other relatives of mine living at the time of my death who in the absolute discretion of my Trustee are in need of emergency assistance for any of the above mentioned purposes and the Trustee is able to make such distribution without affecting the ability of the trust to meet the present needs of the first three numbered categories of beneficiaries herein mentioned or to meet the reasonably expected future needs of the first three classes of beneficiaries herein mentioned. Any decision of the Trustee as to whether or not distribution shall be made, and also as to the amount of such distribution, to any of the persons described hereunder shall be final and conclusive and not subject to question by any legatee or beneficiary hereunder.

(c) Upon the death of my father, Vernon E. Presley, the Trustee is instructed to make no further distributions to the fourth category of beneficiaries and such beneficiaries shall cease to have any interest whatsoever in this trust.

(d) Upon the death of both my said father and my said grandmother, the Trustee is directed to divide the Residuary Trust into separate and equal trusts, creating one such equal trust for each of my lawful children then surviving and one such equal trust for the living issue collectively, if any, of any deceased child of mine. The share, if any, for the issue of any such deceased child, shall immediately vest in such issue in equal shares but shall be subject to the provisions of ITEM V herein. Separate books and records shall be kept for each trust, but it shall not be necessary that a physical division of the assets be made as to each trust.

The Trustee may from time to time distribute the whole or any part of the net income or principal from each of the aforesaid trusts as the Trustee, in its uncontrolled discretion, considers necessary or desirable to provide for the comfortable support, education, maintenance, benefit and general welfare of each of my children. Such distributions may be

made directly to such beneficiary or to any person standing in the place of a parent or to the guardian of the person of such beneficiary and without responsibility on my Trustee to see to the application of any such distributions and in making such distributions, the Trustee shall take into account all other sources of funds known by the Trustee to be available for each respective beneficiary for such purpose.

(e) As each of my respective children attains the age of twenty-five (25) years and provided that both my father and grandmother then be deceased, the trust created hereunder for such child shall terminate, and all the remainder of the assets then contained in said trust shall be distributed to such child so attaining the age of twenty-five (25) years outright and free of further trust.

(f) If any of my children for whose benefit a trust has been created hereunder should die before attaining the age of twenty-five (25) years, then the trust created for such child shall terminate on his death, and all remaining assets then contained in said trust shall be distributed outright and free of further trust and in equal shares to the surviving issue of such deceased child but subject to the provisions of ITEM V herein; but if there be no such surviving issue, then to the brothers and sisters of such deceased child in equal shares, the issue of any other deceased child being entitled collectively to their deceased parent's share. Nevertheless, if any distribution otherwise becomes payable outright and free of trust under the provisions of this paragraph (f) of this ITEM IV of my will to a beneficiary for whom the Trustee is then administering a trust for the benefit of such beneficiary under the provisions of this last will and testament, such distribution shall not be paid outright to such beneficiary but shall be added to and become a part of the trust so being administered for such beneficiary by the Trustee.

Item IV(b) directs the Trustee to pay for the support and maintenance of "(1) my daughter, Lisa Marie Presley, and *any other lawful issue* I might have." (emphasis supplied). Paragraph (d) of Item IV provides for a division of the residuary trust by creating a separate and equal trust for "each of my *lawful children.*" (emphasis supplied). Paragraph (c) of Item IV provides for distribution of the assets of the respective trusts "as each of my *respective children* attains the age of twenty-five (25) years." (emphasis supplied). The trial court held that by the use of the foregoing language, the decedent intended only for "Lisa Marie Presley or other legitimate children to take under the will."

■ The Probate Court of Shelby County has concurrent jurisdiction with the Chancery Court to construe and interpret wills. 1985 Tenn.Priv. Acts ch. 28. The construction of a will is a question of law for the court and will construction cases are uniquely suited to the summary judgment procedure because they generally involve legal issues only. *Estate of Robison v. Carter*, 701 S.W.2d 218 (Tenn.App.1985). As we previously noted, for the purposes of the motion for summary judgment only, it is conceded that the appellant is Elvis Presley's illegitimate daughter.

■ The cardinal rule in construction of all wills is that the court shall seek to discover the intention of the testator and give effect to it unless it contravenes some rule of law or public policy. *Third Nat'l Bank in Nashville v. First American Nat'l Bank of Nashville*, 596 S.W.2d 824 (Tenn.1980). The testator's intention is to be ascertained from the particular words used in the will itself, from the context in which those words are used, and from the general scope and purposes of the will, read in the light of the surrounding and attending circumstances. *Moore v. Neely*, 212 Tenn. 496, 502–03, 370 S.W.2d 537, 540 (1963); *Fisher v. Malmo*, 650 S.W.2d 43 (Tenn.App.1983).

■ Every will is *sui generis* and therefore reference to other cases involving the testator's intention is usually of little assistance. *See Burton v. Kinney*, 191 Tenn. 1, 231 S.W.2d 356 (1950); *Marsh v. Porch*, 35 Tenn.App. 62, 242 S.W.2d 691

(1951). A will should be construed to speak as of the date of the testator's death. T.C.A. § 32–3–101 (1984). In construing a will it is necessary to look to the entire will and the testator's intention must be determined from what he has written and not from what it is supposed he intended. *Burdick v. Gillpin,* 205 Tenn. 94, 103, 325 S.W.2d 547, 551 (1959); see *First American Nat'l Bank v. DeWitt,* 511 S.W.2d 698, 706 (Tenn.1972).

> Appellant contends in her brief:
> The word "lawful" is merely a modifier of the word "issue" and merely explains that issue eligible to take under a will must be issue who are lawfully able to share in an estate under a will. It has no correlation to the term "legitimate." Indeed if used with the word "issue," the term "legitimate" would make little sense. "Legitimate" is generally perceived as applying only to children. However, the term "issue," is discussed is much broader than the term children. The idea that "legitimate issue" would mean grandchildren, cousins, etc. who are issue and who are "legitimate" (i.e. were born in wedlock of their parents) would not be sensible.... [t]he courts are to give effect to the testator's use of the word "issue" which is widely definable, then the idea that "lawful" must correlate to mean "legitimate" is insupportable.

We cannot agree with the appellant's reasoning. We agree with appellant that generally the word "issue" includes all persons who have descended from a common ancestor and unless the context indicates otherwise means lineal descedents without regard to degree of proximity or remoteness. *Burdick* at 109, 325 S.W.2d at 554.

In *Third National Bank v. Noel,* 183 Tenn. 349, 192 S.W.2d 825 (1946), our Supreme Court stated:

> The rule in this state, as announced in *Ridley v. McPherson,* 100 Tenn. 402, 43 S.W. 772, is that *issue* includes all persons who have descended from a common ancestor; that unless controlled by the context, it means lineal descendant without regard to degree of proximity or remoteness from the original stock or source. This is in accordance with the great weight of authority as shown by many cases collected in notes, 2 A.L.R. 918, and 5 A.L.R. 195. That the rule still prevails in this jurisdiction, unless controlled by the context, is recognized in the later cases of *Lea v. Lea,* 145 Tenn. 693, 237 S.W. 59, and *White v. Kane,* 178 Tenn. 469, 159 S.W.2d 92. In the two later cases the Court found the context required that a different meaning be given to the word.
> While we recognize that such an interpretation of the word issue is not much favored by the courts and will not be adopted if there is a faint glimpse of a contrary intention in the instrument involved, nevertheless what may be called the technical definition of issue is now a rule of property and is to be accepted unless we can perceive in the instrument using the word some glimpse of a contrary design. (emphasis in original).

*Id.* at 358–59, 192 S.W.2d at 828–29. In the case before us, we must look at the context in which the word "issue" was used to determine if there is "some glimpse of a contrary design." *Id.* at 359, 192 S.W.2d at 829. In Item IV(b), the testator provides for "(1) my daughter, Lisa Marie Presley, and any other lawful issue I might have." Obviously, he is relating "other lawful issue" in the same class with his daughter. This becomes even more evident when we consider Item IV(d) providing for the division of the corpus of the trust. The testator explicitly provides for "one such equal trust for each of my lawful children then surviving and one such equal trust for the living issue collectively, if any, of any deceased child of mine." The word "issue" is ordinarily construed to mean "children" where it has been used interchangeably by the testator with the word children. 80 Am.Jur.2d *Wills,* § 1220 (1975). *See Lea v. Lea,* 145 Tenn. 693, 237 S.W. 59 (1921); *White v. Kane,* 178 Tenn. 469, 159 S.W.2d 92 (1942).

In the case before us, the testator, in dealing with support and maintenance,

equates other "lawful issue" with reference to his daughter. In light of his division of the corpus of the trust among his lawful children, it appears that the testator is using the term "issue" in Paragraph IV(b) as meaning children.

The will also uses the explicit term "lawful" when describing the children that will take under the will. Appellant asserts that this merely means that they must prove that they are children of the testator. We disagree. In *Decker v. Meriwether*, 708 S.W.2d 390 (Tenn.App.1985), one of the issues before the Court was whether an illegitimate child could take under a will provision providing for property to pass to her father's lawful issue. This court held that in view of the words used and the surrounding circumstances, it was the testator's intent that only legitimate children of the father would take under the provision of the testator's will.

In the case before us, it is uncontroverted that Elvis Presley had been involved in a paternity case and was cognizant of claims placed against him for children born out of wedlock. In Item IV, paragraph (b), the testator makes provision for the support and maintenance of his family, vesting the trustee with absolute discretion in the manner and amount to be used for that purpose. At the time the will was executed, the testator had one child of his only marriage. The provision for the child is coupled with the provision "and any *other* lawful issue I might have." (emphasis supplied) There was no doubt in Mr. Presley's mind that Lisa Marie was his issue, nor was there any doubt on his part that she was born in lawful wedlock. With this knowledge of the status of his daughter, he explicitly describes the other objects of his bounty as "any other lawful issue."

Moreover, the clause provides for issue the testator "might have" indicating his intent to provide for those coming into existence after the execution of the will. The intent of the testator to provide for only legitimate children becomes even more clear when we consider his disposition of the corpus of the trust. Here again, he utilizes the descriptive word "lawful" when referring to his children who should receive his bounty. A will should be construed to give effect to every word and clause contained therein. *Bell v. Shannon*, 212 Tenn. 28, 367 S.W.2d 761 (1963). Unless we disregard and give no meaning to the word "lawful," we are compelled to believe that the word was used to denote those born in lawful wedlock.

Appellant's argument that the word "lawful" has to do with a determination of who might qualify as "issue" of the testator is not persuasive. The determination of who is or who is not an "issue" and a determination of who is or who is not a child can be made without any reference to the legal marital status of the parents of the particular person for which the determination is made.

Appellant has not cited, nor has our research revealed, any authority to support appellant's assertion that "lawful issue" as used in the will before us could be construed as establishing the testator's intent to provide for those that can prove their blood relationship under the law. The authorities developed from our research define "lawful issue" to include only legitimate children. *See Traders Bank of Kansas City v. Goulding*, 711 S.W.2d 872 (Mo. 1986) (en banc); *Brisbin v. Huntingdon*, 128 Iowa 166, 103 N.W. 144 (1905). In *Central Trust Company v. Skillin*, 154 A.D. 227, 138 N.Y.S. 884 (1912), the Court said:

"Lawful" is the antithesis of "unlawful" or "illegitimate." In popular usage, the words "lawful issue" have an accepted meaning. All children are "issue" of their parents, for the operation of natural laws favorable to the procreation and birth of offspring is not affected by the existence or nonexistence of a marital contract. But when this word relating to children is qualified by the adjective "lawful," it is ordinarily understood to mean those begotten and born in lawful wedlock, and none others. *United States Trust Co. v. Maxwell* [26 Misc. 276, 57 N.Y.S. 53]; *Black v. Cartmell*, 10 B.Mon. (Ky.) 188, 193; *Brisbin v. Huntington*, 128 Iowa, 166, 103 N.W.

144, 5 Ann.Cas. 931. At common law the words "child," "son," "issue," even when unqualified by the adjective "lawful," excluded all but the latter class. *Cartwright v. Vawdry,* 5 Vesey, 530; *Earle v. Wilson,* 17 Vesey, 528; *Wilkinson v. Adam,* 1 Vesey & Beames, 422, on page 461; *Swaine v. Kennerley,* idem, 468; *Brisbin v. Huntington,* supra; *Collins v. Hoxie,* 9 Paige, 81; *Cromer v. Pinckney,* 3 Barb. Ch. 466; *Johnstone v. Taliaferro,* 107 Ga. 6, 32 S.E. 931, 45 L.R.A. 95; *Shearman v. Angel,* Bailey, Eq. (S.C.) 351, 23 Am.Dec. 166; *Gibson v. McNeely,* 11 Ohio St. 131; *Doggett v. Mosely,* 52 N.C. (7 Jones Law) 587; *Thompson v. McDonald,* 22 N.C. (2 Dev. & B.Eq.) 463; *Heater v. Van Auken,* 14 N.J.Eq. 159.

138 N.Y.S. at 886.

 We note also that even without the use of the qualifying word "lawful," the general rule recognized in Tennessee is that absent clear evidence of contrary intention, words such as "children" in a will are construed to mean legitimate children and not to include illegitimate children. *Scales v. Scales,* 564 S.W.2d 667 (Tenn. App.1977). This appears to be the majority rule in the United States. *See* Annotation, *Right of Illegitimate Child to Take Under Testamentary Gift to "Children,"* 34 A.L. R.2d 4, § 5 (1954), and cases cited therein.

Accordingly, we construe the will of Elvis Presley to exclude illegitimate children as beneficiaries.

The last issue presented for review as stated in appellant's brief is:

VI. Whether, in the event this court determines that the term "legal issue" excludes illegitimate issue, such decision would constitute state action to discriminate against illegitimates without any substantial state interest which is violative of the Equal Protection Clause of the 14th Amendment of the Constitution of the United States and therefore unconstitutional.

This issue is raised for the first time on appeal. Since it was not raised in the trial court, it cannot be raised in this Court for the first time. *Lawrence v. Stanford,* 655

S.W.2d 927 (Tenn.1983); *Sutton v. Bledsoe,* 635 S.W.2d 379 (Tenn.App.1981).

In summary, the order of the probate court is modified to vacate the finding of that court that the appellant is not the illegitimate daughter of the testator, and the finding of that court that the appellant could not be legitimated. As modified, the order of the trial court is in all other respects affirmed. Costs of appeal are assessed against the appellant.

HIGHERS and SUMMERS (Retired), JJ., concur.