# FILED

December 3, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| ESTATE OF EFFIE S. HOOKER, | ) | |
| Deceased, and | ) | |
| HAROLD E. MATHENY, | ) | |
| Administrator, C.T.A. of the | ) | |
| Estate of Effie S. Hooker, Deceased, | ) | |
| | ) | |
| Plaintiffs/Appellants, | ) | |
| | ) | Appeal No. |
| v. | ) | M1999-01479-COA-R3-CV |
| | ) | |
| SUNTRUST BANK OF NASHVILLE, | ) | |
| BANK OF NASHVILLE, N.A., | ) | Williamson Chancery |
| N.A., Trustee Under the Will of | ) | No. IIP971961 |
| John J. Hooker, Sr., and SUNTRUST | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

## COURT OF APPEALS OF TENNESSEE

## APPEAL FROM THE CHANCERY COURT FOR
## WILLIAMSON COUNTY
## AT FRANKLIN, TENNESSEE

## THE HONORABLE RUSS HELDMAN, CHANCELLOR

LARRY R. WILLIAMS
329 Union Street
P. O. Box 190632
Nashville, Tennessee 37219-0632
    ATTORNEY FOR PLAINTIFFS/APPELLANTS

DIANNA BAKER SHEW
EMILY M. SMACHETTI

Farris, Warfield & Kanaday
Eighteenth Floor
SunTrust Center
424 Church Street
Nashville, Tennessee 37219
    ATTORNEYS FOR DEFENDANTS/APPELLEES


REVERSED AND REMANDED


WILLIAM B. CAIN, JUDGE

# O P I N I O N

This case concerns a claim filed by SunTrust Bank, Nashville, N.A.(hereinafter SunTrust) against the estate of Effie S. Hooker, the second wife of famed Middle Tennessee lawyer John J. Hooker, Sr. Mr. Hooker died on Christmas Eve of 1970, leaving the majority of his estate to his widow. According to the prevailing probate practice of the day, a portion of Mr. Hooker's estate was placed in a trust for the benefit of Mrs. Hooker during her life, the remainder to the children of Mr. Hooker's first marriage.

The portion of the will creating the testamentary trust reads, in pertinent part, as follows:

### ITEM FOURTH
All the rest, residue and remainder of my estate real, personal and mixed, including any insurance on my life payable to or collectible by my executor and not previously disposed of, I hereby give, devise and bequeath to the trustee hereinafter named for the following uses and trusts, to-wit:

1. I hereby appoint THIRD NATIONAL BANK IN NASHVILLE, of Nashville, Tennessee, as trustee of this trust and direct that it shall not be required to give bond as such.

2. During the lifetime of my wife, EFFIE HOOKER, the trustee is directed to pay my mother-in-law, MRS. J.M. (FRANCES) SAUNDERS the sum of One Hundred Dollars ($100.00) per

month and shall pay to my said wife all of the remaining net income of the trust estate, and if at any time or from time to time the aggregate income of the income payable hereunder and accruing to her from all other sources shall be insufficient to provide for her necessary care, support and any emergency needs so as to permit her to live in the same standard of living to which she was accustomed at the date of my death, the trustee is authorized to encroach against the corpus of the trust estate to provide for the same and all such encroachments shall be a general charge against the trust estate.

\* \* \*

4. From and after the death of the last surviving of my said wife, EFFIE HOOKER, and MRS. J. M. (FRANCES) SAUNDERS, the trustee shall divide the trust estate into three equal parts, holding one for the benefit of each of my children, to-wit, ALICE KIRBY HOOKER BUCHTEL, JOHN J. HOOKER, JR., and HENRY HOOKER, and the trustee shall pay the income from the share of the trust estate held for each such child to such child.

5. The trust as to the share held for each child shall terminate when such child attains the age of forty-five years or upon the death of Mrs. J. M. Saunders, or upon the death of my wife, EFFIE HOOKER, whichever event occurs last, at which time such share shall be distributed to such child free and discharged of any trust... .

Effie Hooker, the primary beneficiary under this testamentary trust, received income distributions regularly from 1971 until her death on September 10, 1997.

## I. PROCEDURAL HISTORY

Mrs. Hooker's holographic will was admitted to probate on October 3, 1997. Harold Matheny, her only son from a prior marriage was appointed administrator with the will annexed. On October 22, 1997, SunTrust (formerly Third National Bank) presented a claim against the estate in the amount of $34,350.47. The amount of the claim represented principal and interest of 8.04% due under a $25,000 promissory note signed by Mrs. Hooker and dated January 18, 1991. The estate filed an exception to the claim in Williamson County Chancery Court and sought a

declaratory judgment on the validity of the note. Specifically, the estate asserted, *inter alia*, the following:

> 1. That the promissory note underlying the claim against the estate was issued from the corpus of the aforementioned testamentary trust and contrary to the testamentary wishes of John J. Hooker, Sr.
>
> 2. That SunTrust breached its fiduciary duty in failing to advise Mrs. Hooker of her rights of encroachment under said will.
>
> 3. That SunTrust breached its fiduciary duty by failing to advise Mrs. Hooker of the potential, if not actual, conflict of interest in rendering its advice concerning her rights under the aforesaid will.

The exception and declaratory judgment petition were consolidated below. After a full trial on the merits, the chancellor found in pertinent part:

> 1. The Court found Richard Gamble (sic) to be a particularly credible and honest witness. He was particularly forthright in answering the questions posed by counsel for the Estate during cross-examination.
>
> 2. The trust instrument in this case gave the trustee the authority to encroach under certain circumstances, but did not require that the trustee make those encroachments.
>
> 3. The actions of the trustee, in declining to make a Twenty Five Thousand Dollar ($25,000) encroachment, and, instead, making a Twenty Five Thousand Dollar ($25,000) loan to Ms. Effie Hooker in January, 1991, was not unreasonable, in light of the circumstances and the language of the instrument. Applying the reasonable man standard, the trustee's actions in this regard should be sustained.
>
> 4. The Court finds that SunTrust Bank in Nashville, N.A. has been guilty of no breach of fiduciary duty, no improper investment practices and no conflict of interest with regard to the trust at issue in this case.

The court refused the exception to SunTrust's claim and dismissed the Estate's petition for declaratory judgment. From the aforementioned actions of the trial court, the Estate appeals, urging as error the court's interpretation of the will and

its failure to find breach of fiduciary duty. With regard to the latter error, the Estate would urge that SunTrust breached its fiduciary duty by first failing to ascertain Mrs. Hooker's standard of living at Mr. Hooker's death and then failing to forgive the indebtedness in the face of Mrs. Hooker's declining health and advancing age. Inasmuch as this Court's interpretation of John J. Hooker, Sr.'s will is dispositive of the issue, it is unnecessary to comment at length on the Estate's claims of fiduciary misconduct and nonfeasance, except to note the questionable nature of the trustee's actions in this case. Although the trial court primarily noted the "forthright" nature of the testimony of Richard Gammel, SunTrust's Trust Accounts supervisor; that forthright testimony concerns actions by SunTrust which, if consistent with a trustee 's fiduciary duty, challenge the determination of good faith.

## II.  FACTS SURROUNDING THE 1991 LOAN

Mrs. Hooker was the primary beneficiary of a trust established under her late husband's will. She indeed received regular income distributions from that trust. Mrs. Hooker requested no encroachments for twenty years after her husband's death despite the fact that the language of the will authorized the trustee to encroach upon the corpus of the trust . . .

> if at any time or from time to time the aggregate of the income payable hereunder and accruing to her from all other sources shall be insufficient to provide for her necessary care, support and any emergency needs so as to permit her to live in the same standard of living to which she was accustomed[.]

Both parties admit that Mr. and Mrs. Hooker enjoyed a high standard of living through 1970. For the year following, Mrs. Hooker continued to receive the benefit of certain accounts receivable created through her husband's law practice. In addition to these, Mrs. Hooker received the trust income, some periodic rental payments and farm income from the 300 acres of "Hooker Hills, " the Hooker's lavish estate in Williamson County, Tennessee. However, over the next twenty years these assets would be sold off piecemeal as Mrs. Hooker scaled back her style of living.

The loan in question was issued in 1990, in response to a request by Mrs. Hooker for money from the trust to make some improvements to the 4500 square foot condominium in which she was living at the time. According to the correspondence in the record, Mrs. Hooker intended to sell the property and needed the money to "obtain top dollar." In fact, this condominium would not be sold until 1995. Despite this eventual sale, and a corresponding purchase of a new home, according to the uncontradicted testimony of Mrs. Hooker's CPA, by the late 1980's the trust income was her only significant source of regular income. The resulting "lifestyle" decline was from $51,774 in 1971 (including law practice income) to $20,005 in 1991, income from trust account being her primary income. However, in spite of this more than 50% decline in income, SunTrust failed to encroach upon the corpus of the trust, opting instead to issue a demand loan.[1] We find that, contrary to the chancellor's finding below, the actions of this trustee are contrary to the language of Mr. Hooker's will.

## III.  TRUST INTERPRETATION

On appeal the findings of fact of the chancellor are presumed to be correct unless the evidence preponderates to the contrary. T.R.A.P. 13d. The matters of law determined by the chancellor are reviewed on appeal without such presumption. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

SunTrust's power under the trust stems from the grant in John J. Hooker Sr.'s will. Thus an interpretation of the will is necessary to determine powers and duties of the Trustee. As this Court has said most recently in *Briggs v. Estate of Briggs*:

> "The construction of a will is a question of law for the court. *Presley v. Hanks,* 782 S.W.2d 482, 487 (Tenn. App. 1989). The cardinal rule in construction of all wills is that the court shall seek to discover the intention of the testator and give effect to it unless it contravenes some rule of law or public policy. *Third Nat'l Bank in Nashville v. First American Nat'l Bank of Nashville,* 596 S.W.2d 824, 828 (Tenn. 1980).
>
> The testator's intention is to be ascertained from the particular

words used in the will itself, from the context in which those words are used, and from the general scope and purposes of the will, read in the light of the surrounding and attending circumstances. *Presley,* 782 S.W.2d at 487. In construing a will it is necessary to look to the entire will and the testator's intention must be determined from what he has written and not from what it is supposed he intended. *Id.* at 488. A will should be construed to give effect to every word and clause contained therein. *Id.* at 489."

*Briggs v. Estate of Briggs,* 950 S.W.2d 710 at 712 (Tenn. Ct. App. 1997). It is the opinion of this Court that the trustee's actions however motivated, do not comport with the obvious intent of the Testator. John J. Hooker's intent is plain upon the face of the will. The income from the trust was to provide for the care and emergency needs of Mrs. Hooker, so as to maintain her in the style to which she had grown accustomed by the time of Mr. Hooker's death. When this income, coupled with all other sources, failed to suffice in its purpose, the beneficiary was entitled to and the trustee was authorized to encroach upon the corpus of the trust. When this beneficiary approached the trustee for such relief, the Trustee caused to be issued from the beneficiary a memo regarding "Request for Loan of $25,000 from [Trust Under Will] John J. Hooker, Sr. for Home Improvements.[2]" Despite the fact that in the twenty years since Mr. Hooker's death, Mrs. Hooker had neither sought nor received an encroachment, this memo resulted in a December 29, 1990 loan to Mrs. Hooker of $25,000.00 from the corpus of the trust at a time when the corpus was $331,000.00.

In July 1992 the trustee authorized and paid to Mrs. Hooker a $15,000.00 encroachment upon the trust in order to "defray towards monthly living expenses." In 1992, Mrs. Hooker requested forgiveness of the demand note plus an additional $15,000.00. The trustee refused the forgiveness, but encroached for the additional $15,000.00.

On August 10, 1994, Mrs. Hooker requested a $10,000.00 encroachment for deferred maintenance on her homeplace at a time when her gross income,

including social security, was $26,356.00. Trust Officer Richard C. Gammel recommended " ... loaning $10,000.00 to Mrs. Hooker and combine it with the existing $25,000.00 demand promissory note currently held in a trust asset and secure the new loan with a deed of trust of $35,000.00 on her homeplace. <u>I do not recommend an encroachment of $10,000.00 to be paid Mrs. Hooker to fix up her homeplace because of the remaindermen who are Henry (sic) Hooker's three children by a previous marriage.</u>" (emphasis added).

The duty of the trustee is not to protect the remaindermen but rather to follow the orders of the testator. The Supreme Court of Tennessee has said in reliance upon *Pritchard on Wills and Administration of Estates*:

> When a controlling or predominant purpose of the testator is expressed, it is the duty of the court to effectuate that purpose and to construe all subsidiary clauses so as to bring them into subordination to such purpose.
> The rule that the intention shall prevail is grounded in the nature and purpose of construction by the courts; that is, so to construe a writing authorized by law to be made, which purports to be a disposition of the property of the testator, that it will accomplish what he wills to do. This will or intention must of necessity control, unless it contravenes some rule of law or public policy.

*Williams v. Estate of Williams*, 865 S.W.2d 3, 5 (Tenn. 1993).

The will of John J. Hooker, Sr. is plain, clear and unambiguous in expressing his predominant purpose that his wife is the primary object of his bounty, and he allows neither the trustee nor the court to deviate from his purpose. The remaindermen take only what is left after that predominant purpose is fulfilled. The $25,000.00 loan was thus in derogation of rather than fulfillment of the purpose of the testator.

The judgment of the chancellor denying the exception to the claim by the trustee against the estate of Effie Hooker is reversed and the claim is dismissed. The cause is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are taxed against the appellee.

$$\text{_____}$$
                                    WILLIAM B. CAIN, JUDGE

CONCUR:


_____
BEN H. CANTRELL, P.J., M.S.


_____
WILLIAM C. KOCH, JR., JUDGE       In July 1992 the trustee authorized and paid to Mrs. Hooker a $15,000.00 encroachment upon the trust in order to "defray towards monthly living expenses." In 1992, Mrs. Hooker requested forgiveness of the demand note plus an additional $15,000.00. The trustee refused the forgiveness, but encroached for the additional $15,000.00.

On August 10, 1994, Mrs. Hooker requested a $10,000.00 encroachment for deferred maintenance on her homeplace at a time when her gross income, including social security, was $26,356.00. Trust Officer Richard C. Gammel recommended " ... loaning $10,000.00 to Mrs. Hooker and combine it with the existing $25,000.00 demand promissory note currently held in a trust asset and secure the new loan with a deed of trust of $35,000.00 on her homeplace. I do not recommend an encroachment of $10,000.00 to be paid Mrs. Hooker to fix up her homeplace because of the remaindermen who are Henry (sic) Hooker's three children by a previous marriage." (emphasis added).

The duty of the trustee is not to protect the remaindermen but rather to follow the orders of the testator. The Supreme Court of Tennessee has said in reliance upon *Pritchard on Wills and Administration of Estates*:

> When a controlling or predominant purpose of the testator is expressed, it is the duty of the court to effectuate that purpose and to construe all subsidiary clauses so as to bring them into subordination to such purpose.
>
> The rule that the intention shall prevail is grounded in the nature and purpose of construction by the courts; that is, so to construe a writing authorized by law to be made, which purports to be a disposition of the property of the testator, that it will accomplish what he wills to do. This will or intention must of necessity control, unless it contravenes some rule of law or public policy.

*Williams v. Estate of Williams*, 865 S.W.2d 3, 5 (Tenn. 1993).

The will of John J. Hooker, Sr. is plain, clear and unambiguous in expressing his predominant purpose that his wife is the primary object of his bounty, and he allows neither the trustee nor the court to deviate from his purpose. The remaindermen take only what is left after that predominant purpose is fulfilled. The $25,000.00 loan was thus in derogation of rather than fulfillment of the purpose of the testator.

The judgment of the chancellor denying the exception to the claim by the trustee against the estate of Effie Hooker is reversed and the claim is dismissed. The cause is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are taxed against the appellee.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:


_____
BEN H. CANTRELL, P.J., M.S.


_____
WILLIAM C. KOCH, JR., JUDGE