IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 11, 2022 Session[1]

## IN RE ESTATE OF JAMES M. MCKINNEY

**Appeal from the Chancery Court for Williamson County**
**No. 20PR-11151      Joseph A. Woodruff, Chancellor**

_____

### No. M2021-00703-COA-R3-CV

_____

In this appeal, we construe a will. The trial court determined that the will disinherited one of the testator's two daughters by necessary implication when the testator identified only one daughter as his child in the "Family" clause and did not indicate a specific intent to include the other daughter in the residue clause that disposed of his estate. Upon our de novo review, we hold that inclusive language in the family clause does not operate to disinherit one daughter when the residue clause defined "children" differently, such that both of the testator's daughters are beneficiaries under the will. We therefore reverse the judgment of the chancery court and remand the matter for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed;**
**Case Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which W. NEAL MCBRAYER, J., and JILL BARTEE AYERS, Sp. J., joined.

Peter C. Robison and Blakeley Dossett Matthews, Nashville, Tennessee, for the appellant, Kathleen Erin McKinney.

Rebecca Blair, Brentwood, Tennessee, for the appellee, Elizabeth McKinney.

### OPINION

#### FACTUAL AND PROCEDURAL HISTORY

This appeal requires us to construe a will. James McKinney ("Testator"), a resident of Williamson County, died on July 4, 2020. He left a seven-page, typed will that was formally executed on June 16, 2020, before two witnesses who also, along with Testator,

_____

[1] Oral argument in this case was heard on March 11, 2022, at Belmont University College of Law in Nashville, Tennessee.

signed a self-proving affidavit before a notary public. Testator had two daughters: Elizabeth McKinney and Kathleen "Erin" McKinney. We will refer to both daughters by their given names in this opinion as they have the same last name. We mean no disrespect by doing so. The half-sisters' dispute in this will contest centers on the following two clauses:

FAMILY

At the time of executing this Will, I am unmarried. The names of my children are listed below. Unless otherwise specifically indicated in this Will, any provision for my children includes the below-named children, as well as any child of mine hereafter born or adopted.

Elizabeth McKinney

. . .

PRIMARY REMAINDER BENEFICIARIES

I divide all of the residue and remainder of my gross estate, real and personal, wherever situated, into as many equal shares as there are living children of mine and deceased children of mine with issue then living. Each living child shall be given one share. Any share of my estate allocated to a deceased child with issue then living shall be further divided into share for said issue, per stirpes. Unless otherwise indicated in my Will, the shares allocated to my children and the issue of my deceased children will be distributed to these beneficiaries, outright and free of trust. The terms "issue," "child," "children," include a person who has a parent-child relationship, as defined under applicable state law, with the person through whom this person claims benefits under my Will. These terms do include persons who are adults at the time of adoption.

The will makes no other specific bequests but disposes of the entire estate by the above "Primary Remainder Beneficiaries" residue clause. The will also names Testator's daughter Elizabeth as Executor.

Elizabeth petitioned the Williamson County Chancery Court to probate the will and to be appointed Executor. Her petition identified Elizabeth and Erin as heirs at law but Elizabeth as the only beneficiary under the will due to the language of the Family clause. The clerk and master granted the petition by an Order of Probate entered on August 4, 2020, and issued Letters Testamentary.

Erin filed a motion to alter or amend the Order of Probate, on the basis that the petition misrepresented that Elizabeth was the sole beneficiary, resulting in an order "based on . . . mistake, inadvertence, excusable neglect, or misrepresentation" that should be altered or amended, pursuant to Tenn. R. Civ. P. 60.02(2) or (3), to require "normal inventory, interim accountings, and final accountings." Elizabeth responded, asserting that by not naming Erin in the Family clause of the will, Testator "purposely and effectively disinherited [Erin]."

Erin then filed a petition to construe the will, asking the trial court to construe the will to include her as a child and beneficiary of Testator. She argued that Testator's intent is "clear" because the Primary Remainder Beneficiaries clause "identified all his children as remainder beneficiaries" and thus included her as one of his beneficiaries.

The clerk and master entered an order finding that "rather than amending the Order of Probate, it is appropriate to separately order the Personal Representative file an inventory." By that time, Elizabeth had already filed an inventory valuing the estate. The clerk and master further found that there was no misrepresentation in Elizabeth's petition for probate and ordered that Erin's motion for construction of the will would be heard by the trial court.

Elizabeth responded to the petition to construe, arguing that the disinheritance of one child does not provide a basis for attacking a will. She contended that the plain meaning of the will's "Family" clause defines the term "children" by naming only Elizabeth and that the "Primary Remainder Beneficiaries" clause does not state that the term "children" is to be defined differently than in the "Family" clause. Accordingly, she argued that construing the term "children" in the "Primary Remainder Beneficiaries" clause to include Erin would render the "Family" clause meaningless. She also argued that if the trial court should determine that an ambiguity existed in the will, it would be a latent one, for which parol evidence could be considered. To her response, she attached her own affidavit and the affidavit of Kevin Gray, a friend of her father's, both of which discussed the circumstances under which Testator drafted his will.

Erin moved to strike those affidavits as immaterial and an improper use of parol evidence, given her position that the will is unambiguous on its face, or if an ambiguity exists, it is a patent one, for which no parol evidence can be considered. Elizabeth responded, requesting that the trial court "permit consideration of the parol evidence submitted by Respondent in order to put itself as near as possible in the situation of the Decedent at the time the Decedent executed his Last Will and Testament."

After a hearing, at which Elizabeth and Mr. Gray testified, the trial court entered an order permitting Erin to file the affidavit of Bonnie McKinney (Erin's mother and Testator's former wife) and permitting Elizabeth to respond by counter-affidavit. Bonnie McKinney's declaration was filed by Erin, and Elizabeth did not respond.

The trial court then entered an order, holding that it was not permitted to consider testimony from Elizabeth, Bonnie, or Mr. Gray about statements Testator made, but that it could consider the "surrounding circumstances" to determine his intent.[2] Accordingly, the trial court stated that it only considered Elizabeth's testimony that Testator drafted the will without assistance using online software. The trial court also denied Erin's motion to strike the affidavits that Elizabeth had filed upon its conclusion that the pleadings contained no parol evidence. The trial court determined that because the affidavits were referenced in only the "law and argument" part of Elizabeth's response, "there is nothing to strike under [Tenn.] Rule [Civ. P.] 12.06." However, it also stated that "to the extent Elizabeth's memorandum of law contains matter qualifying as immaterial or impertinent under Rule 12.06, the court has declined to consider or rely upon it."

The trial court ultimately determined that the "Family" clause unambiguously reflected Testator's intent that all references to his children should be construed to mean only Elizabeth. The trial court also concluded that the residuary clause's failure to name Erin did not indicate an intent to include her. Under the trial court's construction of the will, Erin was not a beneficiary "because Testator's intent to disinherit Petitioner is clear, unambiguous, and effective under Tennessee law."

Erin appeals, raising the following issues for our review:

1. Whether the trial court erred by considering parol evidence of the testator's alleged testamentary intent.
2. Whether the trial court erred in construing the "Family" provision of the last will and testament of James M. McKinney to exclude his daughter, Appellant Kathleen Erin McKinney.
3. Whether the trial court erred in construing the residuary provision of the last will and testament of James M. McKinney to not include all his children.

STANDARD OF REVIEW

Construction of a will, including whether an heir has been disinherited, is a question of law for the court. *In re Estate of Eden*, 99 S.W.3d 82, 91 (Tenn. Ct. App. 1995) (citing *McDonald v. Ledford*, 140 Tenn. 471, 477-78, 205 S.W. 312, 314 (Tenn. 1918); *Presley v. Hanks,* 782 S.W.2d 482, 487 (Tenn. Ct. App. 1989)). "Since construing a will involves

---

[2] In making this determination, the trial court quoted language from *Stickley v. Carmichael*, in which the Tennessee Supreme Court held that a "testator's intention 'is to be ascertained from the particular words used, from the context, and from the general scope and purpose of the will, read in light of the surrounding and attending circumstances.'" 850 S.W.2d 127, 132 (Tenn. 1992) (quoting *Moore v. Neely*, 370 S.W.2d 537, 540 (Tenn. 1963)).

questions of law, our review will be de novo on the record without any presumption of correctness." *Id.* at 92 (citing *Presley*, 782 S.W.2d at 487).

ANALYSIS

"The purpose of a suit to construe a will is to ascertain and give effect to the testator's intention." *Id*. at 87 (citations omitted). Thus, in a will construction case, we examine the "four corners" of the document to discern the testator's intent, which must prevail unless it contravenes some established rule of law. *Wirt v. Cannon*, 44 Tenn. (4 Cold.) 121, 125 (Tenn. 1867). The Tennessee Court of Appeals has stated:

> In seeking out the testator's intent, we have several rules of construction to aid us in that effort. However, all rules of construction are merely aids in ascertaining the intent of the testator.
>
> In gleaning the testator's intent, we look to the entire will, including any codicil. The testator's intent is to be determined from the particular words used in the will itself, and not from what it is supposed the testator intended. Where the will to be construed was drafted by the testator himself who was not versed in the law and without legal assistance[,] the court in arriving at the intention of the testator should construe the language of the will with liberality to effectuate what appears to be the testamentary purpose.

*In re Estate of Milam*, 181 S.W.3d 344, 353 (Tenn. Ct. App. 2005) (citations and quotation marks omitted). In *Tripp. v. Tripp*, this Court observed:

> The testator's intention is to be ascertained from the particular words used in the will itself, from the context in which those words are used, and from the general scope and purposes of the will read in light of the surrounding circumstances. . . . Every will is *sui generis* and therefore references to other cases involving the testator's intention are usually of little assistance in construing and interpreting wills.

No. 03A01-9508-CH-00271, 1996 WL 83013, at *3 (Tenn. Ct. App. Feb. 28, 1996) (citing *Presley,* 782 S.W.2d at 487-88.

I.      The Evidence Presented

In her first issue raised, Erin presents several arguments pertaining to the trial court's consideration of evidence presented by Elizabeth. First, she argues that the trial court improperly considered the testimony of Elizabeth that Testator drafted the will without assistance using online software. She contends that testimony would have been

based on statements made by Testator, in violation of the Dead Man's Statute, found at Tenn. Code Ann. § 24-1-203, which provides:

> In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party. If a corporation is a party, this disqualification shall extend to its officers of every grade and its directors.

We find Erin's arguments unavailing. That statute does not apply to this will contest because the proceeding is not against the executor in her capacity as such and because the testimony offered would not increase or diminish the size of the decedent's estate, only the distribution of the assets of the estate. *Cantrell v. Estate of Cantrell*, 19 S.W.3d 842, 846 (Tenn. Ct. App. 1999); *In re Estate of Eden*, 99 S.W.3d at 89. Moreover, Erin failed to raise the issue in the trial court below and cannot raise it for the first time on appeal. *Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006).

Second, Erin contends that the trial court impermissibly considered parol evidence in construing the will. She argues that the will is not ambiguous, such that parol evidence is not admissible; however, she also argues that if the will is ambiguous, it is patently ambiguous due to the deficiency of the language of the will itself, and therefore parol evidence is inadmissible. Elizabeth also contends that the will is not ambiguous, but if it is, it suffers from a latent ambiguity.

In *Estate of Burchfiel v. First United Methodist Church of Sevierville*, this Court recited:

> "A 'patent' ambiguity . . . is one which appears upon the face of the instrument, as, for example, a bequest to 'some' of the six children of the testator's brother; while a 'latent' ambiguity is one which is not discoverable from a perusal of the will but which appears upon consideration of the extrinsic circumstances, as, for example, a bequest to 'my cousin John,' it appearing that the testator has two or more cousins named John."

933 S.W.2d 481, 483 (Tenn. Ct. App. 1996) (quoting 80 AM. JUR. 2d § 1281 (1975)). Extrinsic evidence is admissible to explain a latent ambiguity, but not a patent one. *Id*. at 482. However, certain extrinsic evidence is always admissible, regardless of whether a will is unambiguous or patently ambiguous, as stated in *Horadam v. Stewart*:

> [T]o the extent the parol evidence rule is exclusionary, it does not prevent courts from hearing parol testimony that allows them to "put themselves as near as possible in the situation of the makers of the wills whose language is

to be interpreted[.]" *Treanor v. Treanor*, 152 S.W.2d 1038, 1041 (Tenn. Ct. App. 1941). For example, extrinsic evidence that shows "the state of facts under which the wills were made, the situation of the properties of the testators, the members of their families and other relevant or cognate facts[,]" may be considered regardless of ambiguity classification. *Id.* (quoting *Cannon v. Ewin,* 18 Tenn. App. 388, 77 S.W.2d 990, 992 (Tenn. Ct. App. 1934)). Thus, [the testator's] relationship to and history with the parties, as well as any inter vivos transfers of her property, are important considerations to help us understand her intent in executing the Will.

No. M2007-00046-COA-R3-CV, 2008 WL 4491744, at *6 (Tenn. Ct. App. Oct. 6, 2008). Accordingly, evidence that Testator had two children can be considered.

In the Family clause, Testator stated that "any provision for my children includes the below-named children, as well as any child of mine hereafter born or adopted" and then only Elizabeth's name appears. The Primary Remainder Beneficiaries clause's language defines "child" and "children" to "include[] a person who has a parent-child relationship with the person through whom this person claims benefits under my Will." Erin's and Elizabeth's interpretations of these provisions differ, but their different interpretations do not automatically render the language ambiguous. "Although parties may propose conflicting interpretations of a will, if the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the will as a matter of law." 96 C.J.S. *Wills* § 953 (2022); *cf. Fisher v. Revell*, 343 S.W.3d 776, 779 (Tenn. Ct. App. 2009) (stating, in the context of interpreting an insurance policy, that the language "is not ambiguous merely because the parties have different interpretations"). As is discussed in greater detail in section II, the language of the Family clause is inclusive and is not in conflict with the language of the Primary Remainder Beneficiaries clause. We conclude that the will is unambiguous and thus will not consider the extrinsic evidence presented by the parties to explain Testator's use of the language. We therefore affirm the trial court's holding in this regard.

In this context, we are unpersuaded by Erin's argument that the trial court's recitation of the testimony it heard indicates that it considered such testimony in making its ruling, in violation of the rule against extrinsic evidence. The trial court expressly stated that it did not consider that evidence other than Elizabeth's testimony that Testator drafted the will without assistance, using online software. Such evidence, along with the undisputed fact that Testator had two daughters, is permissible for the trial court's and our consideration, as it provides the "surrounding circumstances" of the drafting of the will so as to shed light on Testator's intent. *Presley*, 782 S.W.2d at 487; *see also Stickley*, 850 S.W.2d at 132; *Horadam*, 2008 WL 4491744, at *6. Trial courts (and juries) are certainly equipped to exclude evidence from consideration that may have been presented, and the trial court's mere recitation in the order of all the evidence presented to it does not lead us to the conclusion that its decision was improperly influenced by inadmissible evidence.

II. Construction of the Will

We take up Erin's second and third issues together, as each focuses on a separate clause of the will, but we must construe them together. She argues that the trial court misinterpreted the language of the Family clause to be exclusive rather than inclusive, and then limited the definition of "children" in the Primary Remainder Beneficiaries clauses accordingly. This interpretation then resulted in the trial court's conclusion that Testator disinherited Erin. In response, Elizabeth argues that the trial court was correct because the Family clause limits Testator's children to only her name and the Primary Remainder Beneficiaries clause "does not specifically state that . . . Erin . . . is to be included as a beneficiary of the Testator's will," resulting in Erin's disinheritance by implication.

In construing this will and determining whether Testator disinherited Erin, we examine the language within the four corners of the document, determining Testator's intent from the particular words he used. *In re Estate of Milam*, 181 S.W.3d at 353. "'Every word used by a testator in a will is presumed to have some meaning.'" *Id*. at 354 (quoting *In re Estate of Jackson*, 793 S.W.2d 259, 261 (Tenn. Ct. App. 1990)). "[I]f there are provisions in the will that tend to conflict, we must look to that provision which in our opinion more nearly conveys the testator's wishes and reconcile or disregard the conflicting portions. The primary intent must override the secondary one if either must fail." *Jones v. Jones*, 462 S.W.2d 872, 873-74 (Tenn. 1971).

"The power to disinherit is part of the power of testamentary disposition." *In re Estate of Eden*, 99 S.W.3d at 92 (citing *Bradford v. Leake*, 137 S.W. 96, 98 (Tenn. 1911); *In re Estate of Jackson*, 793 S.W.2d 259, 261-62 (Tenn. Ct. App. 1990)). "In order to disinherit an heir, a testator must prepare a will that disinherits the heir by express words or by necessary implication." *In re Estate of Eden*, 99 S.W.3d at 92 (citing *McDonald*, 205 S.W. at 314.) "[A] testator's failure to provide for a living child in his or her will is ordinarily equivalent to a disinheritance of that child." Id. at 93 (citing *Burns v. Allen*, 23 S.W. 111, 112 (Tenn. 1893)). A court may conclude that "a child has been disinherited by unavoidable inference when the child is not mentioned in the will and the testator leaves all his property to someone else." *Id*. (citing *Reaves v. Hager*, 50 S.W. 760, 761 (Tenn. 1899)). "A testator can disinherit his heirs only by giving his property to others, and mere words excluding the heirs, without an affirmative disposition to others, will not suffice to disinherit them[.]" 25 T.J., Wills § 114 (2020) (citing *Waller v. Sproles*, 22 S.W.2d 4, 5 (Tenn. 1929) ("[T]he testator could not by mere words disinherit his next of kin . . . . [b]ut he could do so by will disposing of his entire estate."); *Nichols v. Todd*, 101 S.W.2d 486, 490 (Tenn. Ct. App. 1936) ("A testator can disinherit his heirs only by giving his property to others, and real property not devised will pass to the heir under the laws of descent.")).

In light of the foregoing authority, we must ascertain to whom Testator left his property to determine whether Erin was actually disinherited. The Primary Remainder Beneficiaries clause, which is the only clause that makes any dispositions in the will,

disposes of the estate by dividing it "into as many equal shares as there are living children of mine and deceased children of mine with issue then living" and directing how the shares will be given to the beneficiaries. That clause defines "child" or "children" to mean "a person who has a parent-child relationship, as defined under applicable state law, with the person through whom this person claims benefits under my will." Earlier in the will, in the Family clause, Testator specified that "any provision for my children includes the below-named children, as well as any child of mine hereafter born or adopted." Then, Elizabeth's name is listed.

The Family clause does not of itself dispose of any property, but "it may be resorted to and found useful in resolving doubts as to the meaning of particular dispositive clauses of the will." *McDonald*, 205 S.W. at 313. However, "words of testamentary direction cannot be disregarded as surplusage, if any reasonable meaning can be drawn from them." *Rinks v. Gordon*, 24 S.W.2d 896, 897 (Tenn. 1930). So, it is the words of the Primary Remainder Beneficiaries clause that may not be overlooked, as they are the only words that dispose of Testator's estate. The Primary Remainder Beneficiaries' definition of who is a child thus controls, and given the seeming inconsistency between it and the Family clause, we now parse the language to determine whether Testator intended to leave a share of his estate to Erin or not.

The Family clause clearly indicates that Testator considered Elizabeth as his child by stating, "Unless otherwise specifically indicated in this Will, any provision for my children includes the below-named children . . . [:] Elizabeth McKinney." While Elizabeth argues that the Family clause "limits Testator's 'children' to Appellee Elizabeth McKinney," we respectfully disagree with her interpretation. Testator chose to use the word "includes" in this phrase. To "include" something is "[t]o contain as a part of something." *Include*, BLACK'S LAW DICTIONARY (11th ed. 2019). As this Court has recently stated in the case of *In re Estate of Clifton*, in which we interpreted a will with language almost identical to the clauses at issue in this case in a will construction suit brought by that testator's great-grandchildren:

> [W]hen the word "includes" or "including" is used, "it serves as a term of enlargement, not one of restriction." *Lovlace v. Copley*, 418 S.W.3d 1, 18 (Tenn. 2013); *see Sears, Roebuck & Co. v. Roberts*, No. M2014-02567-COA-R3-CV, 2016 WL 2866141, at *6 (Tenn. Ct. App. May 11, 2016) (recognizing that "use of the term 'include' does 'not ordinarily introduce an exhaustive list'" (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 132 (2012))). Thus, by stating that "'issue' . . . **includes** a person who has a parent-child relationship with [Testator's children]," the will does not **exclude** those who do not.

633 S.W.3d 557, 560 (Tenn. Ct. App. 2021) (emphasis and second pair of bracketed text in original), *appeal denied* (July 12, 2021).

Testator's choice of wording in the Family clause ensures that Elizabeth would be included as a beneficiary by identifying her by name, but it does not limit the word "children" in such a way that others could not also be included in the category of children. Indeed, the clause provides that the will might "otherwise specifically indicate[]" that children could be defined differently. We find that the inclusive wording chosen by Testator does not limit every instance of the word "children" that appears in the will to mean only "Elizabeth."

Indeed, the Primary Remainder Beneficiaries clause provides such a specific indication that the word "children" had a broader meaning. It disposes of the estate by dividing it "into as many equal shares as there are living children of mine and deceased children of mine with issue then living" and directs how the shares will be given. It then states, "The terms 'issue,' 'child,' 'children,' include a person who has a parent-child relationship, as defined under applicable state law, with the person through whom this person claims benefits under my will."

The "applicable state law" referred to in the sentence is Tenn. Code Ann. § 31-1-101, which defines a person's "issue" as "the person's lineal descendants, adopted as well as natural born, of all generations, *with the relationship of a parent and child at each generation being determined by the definitions of child and parent contained in this title*." *Id*. § 31-1-101(6) (emphasis added). The Code defines "child" to "include[] any individual, adopted or natural born, entitled to take as a child under this title by intestate succession from the parent whose relationship is involved and excludes any person who is only a stepchild, a foster child, a grandchild or any more remote descendant." *Id*. § 31-1-101(1). Meanwhile, "parent" is defined to "include[] any person entitled to take, or who would be entitled to take if the child, adopted or natural born, died without a will, as a parent under this title by intestate succession from the child whose relationship is in question and excludes any person who is only a stepparent, foster parent, or grandparent." *Id*. § 31-1-101(7). Applying these definitions, there is no question that Erin fits the statute's definition of a child or that Testator had a parent-child relationship with her.[3] Thus, she would claim benefits under the will through Testator himself, as would Elizabeth.

---

[3] Elizabeth's arguments and the trial court's conclusions appear to be based on a reading of the definitions in the Primary Remainder Beneficiaries clause that is not in line with the actual words; the trial court found that "[b]ecause Erin does not enjoy a parent-child relationship with *another person* 'through whom' she claims benefits under the will, this provision does not generally or specifically reflect Testator's intent to include her." (Emphasis added.) We do not read the sentence in the will that way, as the applicable law contemplates that the relationship is evaluated "at each generation," Tenn. Code Ann. § 31-1-101(6). There can be no dispute that Erin fits the definition of a child as set forth in Tenn. Code Ann. § 31-1-101(1), that Testator fits the definition of a parent set forth in Tenn. Code Ann. § 31-1-101(7), and thus she and Testator had a parent-child relationship.

In light of our construction of the language in the Family clause as being inclusive, rather than exclusive, we conclude that the language of the Primary Remainder Beneficiaries clause provides a broader definition of "children" that gives effect to Testator's intent that Elizabeth be included as a beneficiary, per the Family clause, and also includes Erin as a beneficiary under the will.[4]

Construing the two clauses in this way, as advocated for by Erin,[5] permits us to retain every word of the will and yields a harmonious construction. *See Wood v. Polk*, 59 Tenn. (12 Heisk.) 220, 224 (Tenn. 1873) (reciting that "[i]t is a safe law in the construction of wills, that all the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole."); *McDonald*, 205 S.W. at 315 (instructing that a court should "hesitate to thrust out of a will any part of the language of the testat[or]" and that "[t]o justify the suppression of a single descriptive term, that term must plainly be out of harmony with the other parts of the demonstration, after putting a reasonable construction upon the entire descriptive context, and 'the judicial leaning should be to the retention of every word.'" (quoting *Evens v. Griscom*, 42 N.J.L. 579, 594 (N.J. 1880)).

In summary, the Primary Remainder Beneficiary clause's broad language renders both Elizabeth and Erin as Testator's beneficiaries under this will, pursuant to the parent-child relationship each had with Testator. The Primary Remainder Beneficiary clause, therefore, does not affirmatively dispose of all his estate to other people, to the exclusion of Erin, as would be required in order to disinherit her. We construe the will to devise Testator's estate to both Erin and Elizabeth, equally.

---

[4] We note that the will uses the plural word "Beneficiaries" (as opposed to "Beneficiary" or "Beneficiar(ies)") in several other clauses, which provides further support for this interpretation of the will.

[5] Even under the construction urged by Elizabeth, we ultimately get to the same result as we have reached today. Elizabeth argues that the "Family" clause's specificity outweighs the general definition of children contained in the later Primary Remainder Beneficiaries clause. She argues that the construction advocated by Erin, which we have concluded is correct, renders the Family clause meaningless. However, the approach Elizabeth advocates—that the Family Clause controls—is unsupported by the law. To adopt the construction urged by Elizabeth, we would have to disregard this subsequent definition provided by Testator in the Primary Remainder Beneficiaries clause. This we cannot do. "When there is a conflict between earlier and subsequent clauses in a will, the latter must control. The rule applies only where the clauses are inconsistent, as clauses should be reconciled if possible." 25 T.J., Wills, § 98; *see also Henry v. Hogan*, 23 Tenn. 208, 210 (Tenn. 1843) (stating that where clauses of the will "are inconsistent and contradictory, and can not therefore stand together, . . .by all principles of construction, the last must prevail over the first."); *Wood*, 59 Tenn. (12 Heisk.) at 224 (reciting that "where several parts [of a will] are absolutely irreconcilable, the last must prevail."). Applying this authority, the latter clause in the will, which in this case is the Primary Remainder Beneficiaries clause, controls. Under its broader definition of "child" and "children," Erin is a beneficiary.

CONCLUSION

We reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion. Costs of this appeal are assessed against the appellee, Elizabeth McKinney, for which execution may issue if necessary.


_/s/ *Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE