IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 8, 2002 Session

## CLIFFORD W. RUSSELL, ET AL. v. SUSAN I. RUSSELL

**Appeal from the Circuit Court (Probate Division) for Davidson County**
**No. 99P-412     Frank G. Clement, Jr., Judge**

_____

**No. M2001-00926-COA-R3-CV  - Filed August 9, 2002**

_____

This appeal involves a will contest coupled with a suit to construe the same will.  The trial court granted summary judgment to the proponent on the will contest and summary judgment to the contestants on the will construction issues.  We hold that the issues cannot be resolved on summary judgment and reverse the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and DON R. ASH, SP. J., joined.

Carrol D. Kilgore, Nashville, Tennessee, for the appellant, Susan I. Russell.

Luther Wright, Jr. and Keli Jean Stewart, Nashville, Tennessee, for the appellees, Clifford W. Russell and John Hall Russell.

**OPINION**

Under a hybrid but mutually acceptable system of pleading heretofore unknown to the practice, the parties present for appellate review: 1) summary judgment for the proponent of a will on the issue devisavit vel non; and 2) summary judgment for the contestants - heirs by intestate succession - on the construction of the will.

Annie Ruth Russell had two children, Juanita Russell McClanahan and the testator in this case, Clifford Miller Russell.  She had five grandchildren, three of them being the children of Clifford Miller Russell and two of them being the children of Juanita Russell McClanahan.  The parties to this lawsuit are the three children of Clifford Miller Russell (grandchildren of Annie Ruth Russell), the proponent of the will, Susan Irene Russell, and the contestants of the will, Clifford W. Russell and John Hall Russell.  Susan Irene Russell is the daughter of Clifford Miller Russell by his first marriage and Clifford W. Russell and John Hall Russell are his sons by a second marriage.

Prior to her death at the age of 99, in August 1998, Annie Ruth Russell owned substantial assets including real property valued at over one million dollars and personal property approximating the same amount.

Prior to June 28, 1991, Annie Ruth Russell, by will, had established a trust under which her assets were to go first for life to her two children and at the death of the last of her children to vest in equal parts in her five grandchildren. Apparently, without the knowledge of her son, the testator Clifford Miller Russell, she revoked this trust arrangement by her Last Will and Testament of June 28, 1991, wherein she made special bequests of $2,000.00 each to her five grandchildren and devised all of the rest of her estate, in equal shares, to Clifford Miller Russell and Juanita Russell McClanahan.

On May 1, 1994, the testator wrote to his daughter, Susan Irene Russell, a letter to be opened upon his death explaining in detail the trust plan of Annie Ruth Russell that had pre-dated her will of June 28, 1991 and explaining further that his own Last Will and Testament then in existence left all of his assets to her. He further explained his plan to regain title to property at 5205 Harding Road in Nashville from his second wife, who had been awarded the property when she and Clifford Miller Russell had divorced in the 1970's.

On December 20, 1997, Clifford Miller Russell wrote the one page holographic will which is the subject of this case. In it he left "all my properties and money" to his daughter Susan Irene Russell with special bequests of $1,000.00 each to his sons, Clifford W. Russell and John Hall Russell. In a final paragraph he left all of his interest in the 5205 Harding Road property to Susan Irene Russell.

Annie Ruth Russell died testate in August of 1998 and her Last Will and Testament of June 28, 1991, whereby she left the great bulk of her properties in equal shares to Clifford Miller Russell and Juanita Russell McClanahan was offered for probate. Three months later, on November 26, 1998, Clifford Miller Russell died and his holographic will of December 20, 1997, leaving special bequests of $1,000.00 each to his two sons and "all my properties and money" to Susan Irene Russell was offered for probate in solemn form.

His two sons, Clifford W. Russell and John Hall Russell, contested the will on unsoundness of mind and undue influence and also sought construction of the will, primarily seeking to determine whether or not the assets of Annie Ruth Russell passed under this holographic will to Susan Irene Russell or by intestate succession in equal shares to the three children of Clifford Miller Russell.

The difficulties inherent in trying to combine in one proceeding a will contest and a suit to construe that same will were set forth in explicit detail by this Court in *In re Estate of Eden*, 99 S.W.3d 82 (Tn. Ct. App. 1995) and need not be repeated here. If a suit to contest a will is successful there is no will to construe. Thus, it is necessary to try the contest drawn under the issue devisavit vel non first.

Will contests differ from will constructions. The two types of proceedings have different purposes and, accordingly, different rules of evidence and procedure. Will contests involve factual questions which are submitted to a jury, while will constructions involve matters of law for the court. It is thus important for trial courts to determine initially whether a particular controversy involves issues of contest or construction or both.

A will contest is a proceeding brought for the purpose of having a will declared void because the testator lacked the requisite mental capacity to make a will or because the will was procured by undue influence or fraud. *Stacks v. Saunders*, 812 S.W.2d 587, 590-91 (Tenn. Ct. App. 1990); *Muse v. Sluder*, 600 S.W.2d 237, 240 (Tenn. Ct. App. 1980). It is an in rem proceeding, *Lillard v. Tolliver*, 154 Tenn. 304, 323, 285 S.W. 576, 581-82 (1926); *Rogers v. Russell*, 733 S.W.2d 79, 84 (Tenn. Ct. App. 1986), that is intended to test only the external validity of the will. *Stacks v. Saunders*, 812 S.W.2d at 590; *Rogers v. Russell*, 733 S.W.2d at 84. All persons claiming an interest in a will may become parties to the proceeding, and the decision in a will contest is conclusive upon all the world. *Petty v. Call*, 599 S.W.2d 791, 793 (Tenn. 1980).

The purpose of a suit to construe a will is to ascertain and give effect to the testator's intention. *Williams v. Estate of Williams*, 865 S.W.2d 3, 5 (Tenn. 1993); *Warrick v. Wright*, 884 S.W.2d 126, 128 (Tenn. Ct. App. 1994); *Presley v. Hanks*, 782 S.W.2d 482, 487 (Tenn. Ct. App. 1989).

*In re Estate of Eden*, 99 S.W.3d 82 (Tn. Ct. App. 1995).

In this case, any effort to administer the disciplines of the Tennessee Rules of Civil Procedure would be futile. The case begins with a petition for solemn form probate of the will which is met by objections from the contestants which assert unsoundness of mind and undue influence but asserts no demand for trial by jury on the issue devisavit vel non. (Indeed, apparently nobody wanted a jury trial on any of the issues since nobody ever demanded or even requested a jury.)

DEVISAVIT VEL NON

"The issue of 'devisavit vel non' is, 'Did he make a will or not.' By extension the issue includes, 'If he made a will, what is the valid last will and testament of the deceased.' " *Green v. Higdon*, 870 S.W.2d 513, 523 (Tenn. Ct. App. 1993).

Both sides submitted affidavits, depositions, and briefs, and, following a hearing on October 12, 2000, the trial court granted summary judgment to the proponent admitting the December 20, 1997 holographic will to probate, the court determining:

[T]hat there is no substantial dispute as to any material fact, and that the motion for summary judgment should be granted, it having been established that the signature and all material provisions of the decedent's said paper-writing of December 20,

1997, are in the decedent's handwriting, which was proven by more than two witnesses, that the decedent was of sound mind and had testamentary capacity, and that there is no evidence that he was acting under undue influence in executing the same, and it is, accordingly,

Ordered by the court that the said will is admitted to probate in solemn form, and that the decedent's daughter, Susan Irene Russell, is appointed executrix of the estate, to serve without bond. All will construction questions any interested party may wish to present are reserved to be determined upon proper pleadings.

It is not disputed that the holographic was entirely in the decedent's handwriting and that it was proven by more than two witnesses. The question for decision is whether or not there is sufficient evidence in the record to withstand summary judgment on the issues of soundness of mind and undue influence.

The familiar standards for reviewing summary judgment cannot be disputed. Courts must view the evidence in the light most favorable to the non-moving party and must also draw all reasonable inferences in favor of the non-moving party. *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993). Courts should grant a summary judgment motion only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *Carvell v. Bottoms*, 400 S.W.2d 28, 26 (Tenn. 1995).

"Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues." *Evco v. Ross*, 528 S.W.2d 20, 25 (Tenn. 1975).

Having carefully reviewed the record we can say, with reasonably certainty, that if we were reviewing a judgment for the proponent after a non-jury trial on the merits, either under a preponderance of the evidence standard under Rule 13(d) of the Tennessee Rules of Appellate Procedure or under the "highly probable" standard of the clear, cogent, and convincing evidence rule, *Estate of Acuff v. O'Linger*, 56 S.W.2d 527, 537 (Tenn. Ct. App. 2001), we would affirm the holding of the trial judge in favor of the proponent of the will. We are, however, reviewing not a non-jury trial on the merits but a grant of summary judgment. We cannot, without compromising the integrity of Rule 56, hold that the affidavit of Dr. Vaughn Allen, the CT scan record from St. James Hospital, together with the deposition of Dr. Hartness and the lay affidavits are insufficient to preclude summary judgment under *Evco v. Ross*.

We therefore reverse the summary judgment for the proponent on devisavit vel non and remand the case for trial on the merits.

Because this is a non-jury case on both will contest and will construction and we consider the summary judgment motion on the will contest to present a very close question, in the interest of

judicial economy should the supreme court find us in error on the will contest, we will consider the proponent's appeal from the trial court action in granting summary judgment to the contestants on the construction of the will.

WILL CONSTRUCTION

The second issue involves the proper construction of the holographic will of Clifford Miller Russell executed December 20, 1997.

The able trial judge, perceiving a material latent ambiguity in the will, considered parol evidence to aid in the construction of the will and rendered summary judgment in favor of the appellees.

Specifically, the trial judge held:

> This cause came on to be heard before the Court on February 16, 2001, upon the filing of a Motion of a Motion [sic] for Summary Judgment by the beneficiaries, Clifford Russell and John Hall Russell (the "Beneficiaries") for Summary Judgment on the proper interpretation and construction of the Holographic Will of Clifford Miller Russell. After reviewing the pleadings, affidavit testimony, the language of the Will, and the May 1994 letter prepared by the Testator, the Court finds that the Beneficiaries' Motion for Summary Judgment should be granted, there being no genuine issues of material disputed facts. The Court finds specifically as follows:

> 1. The December 20, 1997, Will of Clifford Miller Russell contains a latent ambiguity. In the Will, the Testator attempted to convey real estate located at 5205 Harding Place that he did not own at the time of drafting his Will and did not own at the time of his death. Moreover, the Testator clearly did not include this parcel of property in the term "my properties" as used in the Will as he attempted to devise it specifically;

> 2. Because the Testator attempted to devise a parcel of real property that he did not own at his death, the Court must look to extrinsic evidence in order to ascertain the Testator's true intent in devising a piece of realty he did not own;

> 3. The Court is most impressed with two pieces of extrinsic evidence. The first is a May 1994 letter from the Testator to the Executrix of the Estate intended to be opened only upon his death. In the May 1994 letter, the Testator explains in detail his intentions regarding the property that he owned at the time of his death, the property that he thought he might own at the time of his death, and the property that he might inherit from his mother, Annie Ruth Russell, the grandmother of the Beneficiaries. The May 1994 letter conclusively establishes the Testator's

-5-

desire and intent to obtain an interest in the 5205 Harding Place property before his death and his belief that his children would share equally in the ownership of their grandmother's real property at some point after his death;

4. The affidavit of John McClanahan, which describes Annie Ruth Russell's prior Will, also helps establish the Testator's understanding that the property of Annie Ruth Russell would be evenly divided amongst Annie Ruth Russell's grandchildren. In his affidavit, Mr. McClanahan explains that in earlier versions of her Will, Annie Ruth Russell had established a trust for all of her assets, including real property, that would pass upon her death equally to her two children, then to her children's children. Although Annie Ruth Russell subsequently changed her Will, the Court finds that the Testator's Will and May 1994 letter are consistent with his understanding regarding the disposition of his mother's real estate. As a result, the Court finds that in his December 20, 1997 Will, the Testator only intended to devise property that he owned at the time of his death, exclusive of any real property inherited from his mother's Estate. The 5205 Harding Place property, if he had somehow gained an ownership interest in the property prior to his death, would have been devised to the Executrix. The Court notes that the Testator's specific reference to one piece of realty that he contemplated owning in the future, but no mention of other parcels he might own in the future also supports the Beneficiaries' position that "my properties" did not include property inherited by the Testator from the Estate of Annie Ruth Russell. Accordingly, the Court finds that the Testator's interest in his mother's real estate, real estate inherited from Annie Ruth Russell, passed equally to his three children upon his death pursuant to the laws of intestacy as it was not devised or contemplated in the Testator's December 20, 1997 Will; and

5. The Court further finds that the May 1994 letter is consistent with the Testator's treatment of his children under his Will. According to the May 1994 letter, and the affidavits of other parties in this matter, the Beneficiaries have received approximately $50,000.00 in trust funds that the Executrix did not. Thus, in leaving all of his property and monies to the Executrix, the Testator intended to make-up for past inequitable treatment of his children and not to create new inequities. This intent is also consistent with an equal division of real property from the Estate of Annie Ruth Russell.

The grant of summary judgment effectively held Clifford Russell, John Hall Russell, and Susan Irene Russell to be equal tenants in common of all real property passing under the will of Annie Ruth Russell to the testator, not by devise of Clifford Miller Russell but rather by intestate succession.

We respectfully disagree with the trial court.

First of all, the chronology of events preceding the death of Clifford Miller Russell must be kept in mind.

1.    Whatever may have been provided by any prior will of Annie Ruth Russell was effectively revoked by her Last Will and Testament executed June 28, 1991.

2.    The letter from Clifford Miller Russell to his daughter "Sue and Sue Alone" was written May 1, 1994.

3.    Whatever may have appeared in any previous will of Clifford Miller Russell was effectively revoked by his will of December 20, 1997 wherein he provided: "This will supercedes any and all wills made before."

4.    Annie Ruth Russell predeceased Clifford Miller Russell.

No claim is made by any party that the May 1, 1994 letter is itself testamentary in character. It was admitted as parol evidence only for the purpose of explaining a latent ambiguity in the December 20, 1997 will.

In its entirety the May 1, 1994 letter provides:

Dear Sue and Sue Alone -

I will try to explain the chain of events as agreed on in the family since your grandfather's death. We have made a sizable amount of money and at the present time the worth is close to $2,000,000. I can't predict what it will be at my death. Taxes & expenses may reduce this figure somewhat.

First, if Juanita & I outlive grandmother, the monies in her name will go to me and Juanita. If I die it will go to her, if she dies first it will pass on to me. When we are both gone it will pass equally to the 5 of you if all grandchildren are alive. Now one of you may want to buy the real estate, if so 3 appraisals will be made and averaged. Then the monies will be split. I want you to have your share and you may have to be tough about it (knowing your cousins and brothers). But I want you to have your share in particularly because they have received much more up until now than you have (more than $50,000.00 at this writing). That is the reason to tell you the present value and these wishes. I can't tell you about the inflation of properties between now and the time you read this. Nor can I tell you exactly what will be left. But I advise you to get an attorney - (Darrel West is a good one) at the time of negotiations with the other 4. At any rate your share of grandmothers property & holdings should be no less than $200,000. I will list them later.

Of course there will be no problem with my holdings as it goes directly to you as stated in my Will which is in my lock box in Bellevue - Third National Bank. Now - you have been busy all your life, it seems, no reason to think you won't be busy at the time you read this. But I think it would be worth your time to take off long enough to come here & protect your interest and it would be some satisfaction to me because I have worked hard all my life to add to the wealth of this family with no compensation. I have built 80% of the buildings at no profit, and made 100% of the sales and rentals since 1950.

Now there is one bldg on Harding Road (5107 I think. It is a paint store 45' wide 100' long) next to a Texaco filling station that we own - this bldg was awarded to Hollie Mae in the divorce suit which I didn't contest and is a farse because of this. I will bring action to reclaim it if Hollie Dies. This bldg. was a gift before we married and built by me in 1952, so it always was ours but I have let it stay in her name to keep down controversy. I do not want it to pass to anyone but you (if I can help it) because they have received enough help because of me even to today. If I can reclaim this property I will do so before my death to save you the trouble. I am very adamant about you getting your rightful share. I know it will take some time and guts and effort to settle those things up here but I hope you will do it for yours and my sake.

I hope this letter gives you some insight as to what has gone on, and the future. I also hope it gives you some idea of my feelings toward you. You have always meant more to me than I could possibly express.

Any way stay in there and good luck & good fortune to you.

Your Dad

Annie Ruths Assets

Properties 150 x 180, 5109 Harding Road (filling station at this time - worth $800,000)

Woodmont Blvd. House (3709 worth $400,000.00 at this time)

Mortgage at Gallatin Rd. Property (401-409, $275,000.00 at this time being paid off at $3,500.00 per month)

$435,000.00 in CD's at First American Third National Banks

Debts - None at this time

Nursing home approx. $3,00[0].00 monthly

Bank account approx. $20,000.00 at this time

All my impertinent [sic; important] papers (stock insurance - auto titles) all in the lock box already mentioned and dresser drawer and credenza [sic; cradenza] drawer in the apartment at 3709 Woodmont.

Careful study of this letter of May 1, 1994, together with the affidavit of John W. McClanahan, leads to certain indisputable conclusions:

1.      At one time, Annie Ruth Russell had plans for the disposition of her property that provided for it to pass through her children, Juanita McClanahan and Clifford Miller Russell to her grandchildren.

2.      At the time he wrote the May 1, 1994 letter, Clifford Miller Russell was either unaware of or did not recall the revocation of such plans by Annie Ruth Russell by her will of June 28, 1991, whereby she left all of her property in equal shares to Juanita Russell McClanahan and Clifford Miller Russell except for special bequests of $2,000.00 each to her five grandchildren.

3.      He was, in 1994, treating his mother's holdings and his own holdings separate and apart under his apparent assumption that the pass through of the assets of Annie Ruth Russell to the five grandchildren was still a part of the will of Annie Ruth Russell.

4.      This separation is manifested by the provision of the letter "of course there will be no problem with my holdings as it goes directly to you as stated in my will which is in my lock box in Bellevue - Third National Bank."

5.      He treated the old building on Harding Road, apparently vested in his former wife by divorce action, as separate and apart from other properties and intended to somehow reclaim it from his former wife.

6.      He lists his mother Annie Ruth Russell's assets separate and apart.

Such was the situation in May 1994, three and one-half years prior to the December 20, 1997 will by which Clifford Miller Russell revoked all previous wills, including the will in the lock box in Bellevue wherein he had devised all of his holdings directly to Susan I. Russell.

Against this background we now come to the will under consideration in this case of December 20, 1997.

In this December 20, 1997 will, Clifford Miller Russell provides:

I leave all my properties and money to Susan Irene Russell except:

one thousand dollars ($1,000.00) to Clifford W. Russell (son),
one thousand dollars ($1,000.00) to John Hall Russell (my son).

There are two insurance policies with them as beneficiaries.

All my personal belongings to my daughter Susan Irene Russell to do with as she sees fit.

My interest in a building at 5205 Harding Road, Nashville, Tennessee to Susan Irene Russell.

Certain rules of law are applicable:

1.      "[A]ll" is "a very comprehensive word and probably the most comprehensive that can be found in the English language. . . ." *Associated Transport, Inc. v. Fowler*, 337 S.W.2d 5, 7 (Tenn. 1960).

2.      A will shall be construed, in reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, and shall convey all the real estate belonging to him, or in which he had any interest at his decease, unless a contrary intention appear by its words in context.    Tenn. Code Ann. § 32-3-101.

3.      The law presumes that one who undertakes to make a will does not intend to die intestate; " 'and the courts will place such a construction upon the instrument as to embrace all the testator's property, if the words used, by any fair interpretation or allowable implication will embrace it.' *Sizers Pritchard on Wills*, § 386.' " *Ledbetter v. Ledbetter*, 216 S.W.2d 718, 720 (Tenn. 1949).

4.      Parol evidence is admissible to explain a latent ambiguity. *Stickley v. Carmichael*, 850 S.W.2d 127, 132 (Tenn. 1992).

5.      A latent ambiguity is found where "the equivocality of expression or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language, or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words and phrases made use of." *Burchfiel v. First United Methodist*, 933 S.W.2d 481, 482 (Tenn. Ct. Appeals 1996) (citing *Weatherhead v. Sewell*, 28 Tenn. (9 Humph.) 272, 295 (Tenn. 1848).

6.      "A will should be construed to speak as of the date of the testator's death. T.C.A. § 32-3-101 (1984).  In construing a will it is necessary to look to the entire will and the testator's intention must be determined from what he has

written and not from what it is supposed he intended." *Presley v. Hanks*, 782 S.W.2d 482 (Tenn. Ct. App. 1989) (citing *Burdick v. Gilpin*, 205 Tenn. 94, 103, 325 S.W.2d 547, 551 (1959).

The only latent ambiguity claimed to exist in the December 20, 1997 will is in the paragraph relating to certain real estate located at 5205 Harding Place. This provision of the will states: "My interest in a bldg at 5205 Harding Road, Nashville, TN - to Susan Irene Russell - "

In fact, Clifford Miller Russell did not own the property at 5205 Harding Place at the time of his death - - thus the latent ambiguity and the admission into evidence of the May 1, 1994 letter for the purpose of explaining this latent ambiguity. The only part of the May 1, 1994 letter dealing with any Harding Road property provides:

Now there is one bldg on Harding Road (5107 I think. It is a paint store 45' wide 100' long) next to a Texaco filling station that we own - this bldg was awarded to Hollie Mae in the divorce suit which I didn't contest and is a farse because of this. I will bring action to reclaim it if Hollie Dies. This bldg. was a gift before we married and built by me in 1952, so it always was ours but I have let it stay in her name to keep down controversy. I do not want it to pass to anyone but you (if I can help it) because they have received enough help because of me even to today. If I can reclaim this property I will do so before my death to save you the trouble. I am very adamant about you getting your rightful share. I know it will take some time and guts and effort to settle those things up here but I hope you will do it for yours and my sake.

The latent ambiguity in the December 20, 1997 will is thus explained.

To use the remaining portions of this letter, written three and one-half years before the will in issue was written, to completely alter the unambiguous devise of "all my properties and money to Susan Irene Russell" is to convert the May 1, 1994 letter into a controlling testamentary instrument. Indeed, under such construction, the will in issue becomes practically meaningless since if we are to limit "all my properties and money" to mean the "holdings" of Clifford Miller Russell as they were referred to in the May 1, 1994 letter, such "holdings" would have gone to Susan Irene Russell under the provisions of the previous will of Clifford Miller Russell, held in the lock box at Bellevue Third National Bank. This letter written by the testator three and one-half years before the execution of the will in issue offers no evidence of events and circumstances surrounding the execution of the December 20, 1997 will and the unambiguous devise to Susan Irene Russell is otherwise unassailable. It is the fortuitous circumstance of Annie Ruth Russell dying three months before Clifford Miller Russell, coupled with the provisions of Tennessee Code Annotated section 32-3-101 that brings this controversy before the Court in the first place.

Finally, it is unquestionable that the devise to him by Annie Ruth Russell in her will of June 28, 1991 vested the property in issue in this case in Clifford Miller Russell upon the death of Annie

-11-

Ruth Russell. It thus became a part of "my property" pursuant to Tennessee Code Annotated section 32-3-101 and passed under his devise to Susan Irene Russell when Clifford Miller Russell died three months later. The law presumes that one who undertakes to make a will does not intend to die intestate. " '[A]nd the courts will place such a construction upon the instrument as to embrace all the testator's property, if the words used, by any fair interpretation or allowable implication will embrace it. *Sizers Pritchard on Wills*, § 386." *Ledbetter v. Ledbetter*, 216 S.W.2d 718, 720 (Tenn. 1949).

CONCLUSION

As observed at the outset in this case, the parties have resorted to an unorthodox approach to the science of pleading, which cannot survive critical analysis under the Tennessee Rules of Civil Procedure. Indeed, both parties at the bar of this Court acknowledge the procedural flaws but ask this Court to resolve the issues under the record that we have. In the interest of judicial economy, we have attempted to do so but we simply cannot assume to review the two controlling issues in this case as though we were reviewing a trial on the merits when we are, in fact, reviewing summary judgment on both issues. The judgment of the trial court granting summary judgment to the proponents on the issue devisavit vel non is reversed and remanded for trial on the merits. This would ordinarily preclude review of the will construction issue since the will has not yet been established as being the true last will and testament of the testator. In the interest of judicial economy and in the event the Supreme Court should determine this Court to be in error in reversing the summary judgment on the will contest, we have proceeded to construe the will on the record that is before us.

Ordinarily, will construction involves questions of law, *Presley v. Hanks*, 782 S.W.2d 487. In this case, however, extensive parol evidence was considered by the trial court in construing the will and the trial court thereon entered summary judgment in favor of the contestants. Nothing in the record can be construed as a motion for summary judgment on behalf of the proponents and on the record that is before the Court we disagree with the conclusion of the trial judge as to the proper construction of the holographic will of Clifford Miller Russell and hold that, the properties which passed to Clifford Miller Russell upon the death of Annie Ruth Russell, pursuant to her Last Will and Testament of June 28, 1991, passed not to his three children by intestate succession but to the proponent of the will under Tennessee Code Annotated section 32-3-101.

The judgment of the trial court is reversed and the case is remanded for such further proceedings as the parties and the trial court may deem appropriate. Costs are assessed one-half to the executrix and one-half to the contestants.

_____
WILLIAM B. CAIN, JUDGE