FILED
01/13/2026
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 13, 2025 Session

IN THE MATTER OF GEORGE W. WALLS, JR.

Appeal from the Chancery Court for Hamilton County
No. 20-P-119        Jeffrey M. Atherton, Chancellor

No. E2024-01751-COA-R3-CV

In this action involving construction of a last will and testament, the trial court granted a beneficiary's motion to compel distribution of two parcels of real property upon finding that the decedent had devised the parcels to the movant in his will. The trial court entered an agreed order staying execution of the judgment pending appeal. The executor of the decedent's estate has appealed. Discerning no reversible error, we affirm the trial court's judgment. However, we modify the judgment to (1) stay transfer of title to the subject real properties until pending motions and the issue of the estate's solvency have been resolved and (2) extend the conditions provided in the agreed order staying execution until such resolution has been accomplished. We deny the executor's request for an award of attorney's fees and expenses incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed as Modified; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY, P.J., E.S., and KRISTI M. DAVIS, J., joined.

W. Gerald Tidwell, Jr., Chattanooga, Tennessee, for the appellant, Kendall Walls Brown, in her capacity as Executor of the Estate of George W. Walls, Jr.

William H. Horton and Carol M. Ballard, Chattanooga, Tennessee, for the appellee, George Kenneth Walls.

**OPINION**

I. Factual and Procedural Background

On February 14, 2020, Kendall Walls Brown ("Executor") filed a "Petition for Ancillary Administration" in the Hamilton County Chancery Court ("trial court"), seeking

appointment as the personal representative for the estate of her father, George Washington Walls, Jr. ("Decedent"). Decedent had been residing in Florida when he died on August 17, 2018, at the age of seventy-eight. He had owned real property in Florida and in Hamilton County, Tennessee. Executor presented an order admitting Decedent's will to probate, letters of administration, and other documentation indicating that she had been appointed as the personal representative for Decedent's estate ("the Estate") in the Probate Division of the Circuit Court for Flagler County, Florida. She also attached to her petition Decedent's "Last Will and Testament" ("the Will"). The trial court subsequently issued letters testamentary to Executor.

The authenticity of the Will is undisputed. Decedent, an engineer, drafted the Will himself. It is typewritten, three pages in length, signed by Decedent and two attesting witnesses, and notarized. The following provisions of the Will are at issue:

[Section A2]
I devise and bequest the rest and residue of all my worldly goods to be distributed by my executor in an equitable manner among my issue or blood line.

* * *

[Section A5]
My daughter Kendall W. Brown is to receive my property and furnishings of the . . . Magnolia Rd., Florida property.

[Section A6]
My son G.K. Walls is to receive all other properties and all other items and furnishings as well as items that are contained in the utility buildings in all places as well as from the utility building at . . . Pelican Ln., Flagler Bch., FL. He should distribute or liquidate these items as suggested by joint decision of the executors/trustees.

[Section A7]
My Mother Dorothy W. Walls is to have first choice of one vehicle of her choice from my motor vehicles.

My daughter Kendall Walls Brown is to have second choice of any motor vehicle in my inventory of vehicles, boats, or motorcycles.

My son George K. Walls can have any two remaining vehicles of his choice.

The balance of the vehicles can be sold at fair market value at a time when the stock market Dow is at least at the 14000 level. The receipts from such sales are to be put into a liquidity fund(s) of the trust.

[Section A8]
It is my desire that my children and grandchildren should manage their finances so that no proceeds of this holding should fall into the ownership of any entity or person who is not of my issue or blood line.

[Section A9]
Estate taxes are to be paid from such liquid assets as can be supplied from my trust(s) at the time taxes are due and payable. The expenses of maintenance of the R.C. or other properties and vehicles or for storage is to be paid out of a checking account that will be maintained for this purpose.

* * *

[Section A13]
My son, G. K. Walls, or my executor is to treat disposal of any fishing boat and all outboard motors and boats as well as boating and fishing equipment wherever located as specified for the vehicles.

[Section A14]
The assets of real property and other tangible assets I wish to be held in trust for investments in a manufacturing, property rental, or distribution venture preferably one that is not of a retail nature (excluding restaurant based operations). My certificates of deposit are to be held in a separate trust and managed so as to return the greatest yield while being adequately insured within the FDIC guidelines; then, my trustee of any such trusts must limit purchase of any stocks to commodity stocks or those listed on the DOW. The balance to be kept in CD's fully insured at a FDIC insured bank.

[Section A15]
I have created quit claim deeds and/or deeds of trust on my real properties (TN & FL). These are not to be executed during my lifetime.

* * *

[Section A18]
I further desire that my financial interest in any other activities, not specified
if any, will pass to my son G.K. Walls, who presently holds the balance of
such an undivided interest.

* * *

[Section A20]
One trust is to be maintained for real property and others for CD's and other
assets.

On July 6, 2020, Decedent's son, George Kenneth Walls ("Mr. Walls"), filed a
"Motion to Compel Execution of Will." In the motion, Mr. Walls acknowledged
Executor's status as the executor of the Estate and urged that the court compel her to
execute the Will "by immediately and diligently commencing administration of the Estate,
including without limitation authorizing [Mr. Walls] to select for himself two (2)
automobiles from among those motor vehicles described in the Will[.]" On August 25,
2020, Mr. Walls filed an "Amended Motion to Compel Administration of the Estate of
George Washington Walls, Jr. or Remove Executor & Appoint a Substitute." In the
amended motion, Mr. Walls argued the same points as in the first motion and further
alleged a potential conflict of interest for Executor's counsel. Executor filed a response
asserting that she had already been "diligently administering" the Estate and that Mr. Walls
needed to provide an accounting of the Estate's property in his possession before accessing
additional property. She denied any conflict of interest.

Much of the initial dispute between Executor and Mr. Walls involved vehicles and
other personal property stored on a parcel of real property, which had been improved by
utility buildings and was located on Marion Avenue in South Pittsburgh, Marion County,
Tennessee ("Marion County Property"). In an affidavit submitted by Executor with her
response to the motion to compel, she stated that shortly after Decedent's death in 2018,
she and Mr. Walls had conducted an inventory of the vehicles stored on the Marion County
Property and counted forty-seven automobiles, one Wells Fargo trailer, one all-terrain
vehicle, twenty-three motorcycles or scooters, and six Airstream campers.[1] On September
3, 2020, Executor filed a "Motion to Retrieve Personal Property and to Return Personal
Property and/or Proceeds from Sale of Personal Property," averring that Mr. Walls had
"removed and/or sold certain personal property of the Estate" from the Marion County
Property. Following two hearings, the trial court entered an order on September 21, 2020.

---

[1] According to Executor's affidavit, at the time of Decedent's death, the Marion County Property parcel
belonged to Decedent's mother, Dorothy W. Walls, who survived Decedent. Testimony indicated that
Decedent's mother died in 2020. At the time of the trial court's judgment at issue here, it was undisputed
that the Marion County Property was part of Decedent's Estate.

The court (1) directed Executor to diligently administer the Estate; (2) reserved all other matters pending further order of the court; and (3) directed the parties, accompanied by counsel, to inspect and inventory Decedent's personalty, particularly vehicles, located at the Marion County Property.

On May 3, 2023, Mr. Walls filed a motion for accounting, pursuant to Tennessee Code Annotated § 30-2-601, and a motion to compel distribution, pursuant to Tennessee Code Annotated § 30-2-710. Mr. Walls averred that according to the Will, Mr. Walls "would receive all real property of the decedent other than a parcel in Florida." Mr. Walls requested that the court "compel [Executor] to execute deeds to [him] for the Marion County and Hamilton County real property owned by the decedent." The Hamilton County property at issue is a parcel of commercial real property located on Market Street in Chattanooga ("Market Street Property").

Following a hearing, the trial court entered two orders on August 2, 2023: one directing Executor to provide a detailed accounting of the Estate and one setting a hearing regarding Mr. Walls's motion to compel distribution. Executor subsequently filed a response to the motion to compel distribution, averring that Decedent had created a trust through a combination of the Will and a handwritten document that Executor attached to her response. During the hearing regarding the motion to compel distribution, Executor testified that she had found the handwritten "trust" document with the Will in Decedent's Florida home. The document begins with the following paragraphs:

> All DWW/Trust properties. FL & TN ex. RC To be shared by NWW, GWJ & natural born children & grandchildren.
>
> Pro-rata property & utility taxes & expenses to be paid by occupier of property. Trustee to be responsible for collecting & amts. due to pay pt & expenses.
>
> Outbldgs. in FL & TN to be managed directly by the trustee.
>
> R.C. property to be completely under control of trustee.
>
> Maintenance of property bldg. & yards to be controlled by Trustee by/for pro-rata usage.

Executor posited that if the trial court were to decide that Decedent had not created a trust, "the question remains as to how to interpret section A14 of the will which places 'the assets of real property' in a trust."

Executor also asserted that prior litigation involving the Market Street Property had demonstrated that in March 2017, Decedent had filed a lawsuit in the Hamilton County Circuit Court involving that property styled as "*George Kenneth Walls, Trustee f/b/a George W. Walls, Jr. Trust 4C Sons, LLC d/b/a Cheeburger Cheeburger v. George Kenneth Walls*." ("the Cheeburger Lawsuit"). According to Executor, that lawsuit had been filed against tenants who had been required to maintain the structure of a commercial building leased by Republic Parking on the Market Street Property. Decedent had sued when the building collapsed. Executor argued that Decedent's decision to name a trust as the plaintiff in that case demonstrated the existence of the trust. In a reply, Mr. Walls countered that during the prior litigation, Decedent had answered interrogatories and had acknowledged that "there was no written trust document." The record indicates that in recent years, Mr. Walls had derived income from the Market Street Property, which operated as a parking lot after the collapse of the parking garage.

Executor filed interim accountings of the Estate on September 22, 2023, and January 12, 2024. Mr. Walls filed an exception to each interim accounting, claiming missing information and documentation. At the trial court's direction, the parties filed supplemental briefs concerning the disposition of Decedent's real property. On October 13, 2023, Executor filed a "Motion to Bring Real Estate into the Estate," requesting leave to sell the Market Street Property and Marion County Property for the purpose of paying the Estate's debts. Mr. Walls filed a response opposing Executor's motion.

On November 27, 2023, Executor filed a motion for interim attorney's fees and expenses related to administering the Estate in the amount of $24,314.37. Executor attached an attorney's affidavit with detailed itemization of fees and costs. Mr. Walls filed a response opposing the motion and requested that it be referred to the trial court clerk and master. On January 22, 2024, the trial court entered an order referring Executor's two interim accountings, motion for approval of interim attorney's fees, and motion regarding real estate for hearing and determination. Executor subsequently filed a second motion for approval of interim attorney's fees, requesting a total of $18,515.00 in additional fees and expenses incurred from November 2023 through February 2024. Mr. Walls opposed the motion. The trial court entered an agreed order referring the second motion for interim attorney's fees to the clerk and master on March 18, 2024.

On May 6, 2024, Executor filed a motion requesting "instruction regarding the interpretation" of the Will. Executor maintained that the Will contained a patent ambiguity because Decedent's real property could not be devised to his children and simultaneously placed into a trust. Mr. Walls filed a response to Executor's motion for instruction, arguing in part that Decedent's references to a trust in the Will had not created a trust. On May 15, 2024, Executor filed a motion for an accounting of Mr. Walls's income and expenses related to the Estate, particularly requesting an accounting of income and expenses

concerning the Market Street Property, as well as any other personalty belonging to the Estate that had come into Mr. Walls's possession. Mr. Walls filed a response to Executor's motion for an accounting, stating that because he was the beneficiary of the Market Street Property in the Will, "it was appropriate for him to collect the income and pay the expenses relating to such property."

Following a hearing, the trial court entered an order on August 20, 2024, finding that the records produced by Mr. Walls for two previous hearings "represent the complete accounting that he is able to produce." The court found that "[a]ll documents constituting said accounting and/or inventory are attached to this order and shall be considered the filing of [Mr. Walls's] complete accounting and/or inventory."

Beginning on November 29, 2023, the trial court conducted a hearing regarding Mr. Walls's motion to compel distribution and Executor's motion for instruction. During the first day of the hearing, the court deferred the matter for mediation, which ultimately proved unsuccessful, and the parties returned for a final day of the proceeding on September 24, 2024.

In an order entered on October 22, 2024, the trial court granted Mr. Walls's motion to compel distribution to him of the Market Street Property and Marion County Property. The court found that in the Will, Decedent had devised the parcels to Mr. Walls. In its bench ruling, attached and incorporated into the order, the court found a patent ambiguity when comparing sections A5 and A6 against section A14 of the Will. The court determined that section A14 was "not a donative directive" and not a "particularly controlling provision relative to the existence of a trust that doesn't exist to begin with." By contrast, the court found that sections A5 and A6 demonstrated "donative intent" and "avoid[ed] intestacy," "most clearly articulat[ing] the testator's intent." The court certified the order as final, pursuant to Tennessee Rule of Civil Procedure 54.02, but directed that the order was "without prejudice to any pending motion to subject such property to any unpaid debts of the estate as determined by the accounting presently before the Clerk and Master in this case."

Executor timely appealed. Upon Executor's motion, the trial court entered an agreed order staying execution of the judgment pending appeal pursuant to Tennessee Rule of Civil Procedure 62.05(2). The agreed order prohibited Mr. Walls from "encumbering, mortgaging, selling or transferring ownership" of the subject properties but allowed him to "continue deriving rental income from the Market Street property through its current agreement with Republic Parking."

## II. Issues Presented

Executor presents four issues on appeal, which we have restated slightly as follows:

1.  Whether the trial court erred by ruling that Sections A5 and A6 of the Will are controlling over subsequent contradictory provisions and create a donative intent to devise all real property, including the real property that Decedent purportedly believed was in a trust prior to his death.

2.  Whether Decedent created an enforceable residuary clause in the Will that applies to all remaining assets or whether the remaining real property passes by intestacy.

3.  Whether the trial court retains subject matter jurisdiction to determine Executor's entitlement to attorney's fees and costs incurred on appeal or whether this Court should decide the issue.

4.  Whether the conveyance of the real property must be delayed until the trial court determines whether the Estate is insolvent and determines the reasonableness of legal fees, legal expenses, and Executor's expenses.

## III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law, including those related to subject matter jurisdiction, *de novo* with no presumption of correctness. *See Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000). Furthermore, construction of a will is a matter of law that we review *de novo* with no presumption of correctness. *In re Estate of Milam*, 181 S.W.3d 344, 353 (Tenn. Ct. App. 2005); *In re Estate of Schubert*, No. E2014-01754-COA-R3-CV, 2015 WL 4272192, at *4 (Tenn. Ct. App. July 15, 2015). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

IV.  Interpretation of the Will

Executor contends that the trial court erred by finding that sections A5 and A6 of the Will contained Decedent's donative intent as to all real property and by finding that these sections were "controlling" over the instrument's subsequent provisions referencing one or more trusts.  Executor also contends that the trial court erred by finding section A6 to be a residuary clause applicable to real property.  Executor urges that because the existence of a trust could not be established, the real property not devised through section A5, namely the Market Street Property and Marion County Property, must pass by intestacy.  Mr. Walls responds that the trial court properly found that Decedent devised the Market Street Property and the Marion County Property to Mr. Walls by operation of sections A5 and A6.  Upon careful review, we determine that although section A6 does not function as a general residuary clause, it does operate with section A5 to devise the subject real property to Mr. Walls.

As this Court has explained regarding interpretation of a will:

"It is the absolute right of the testator to direct the disposition of his property and the Court[s] are limited to the ascertainment and enforcement of his directions." *Daugherty v. Daugherty*, 784 S.W.2d 650, 653 (Tenn. 1990) (citing *Nat'l Bank of Commerce v. Greenberg*, 195 Tenn. 217, 258 S.W.2d 765 (1953); *Third Nat'l Bank in Nashville v. Stevens*, 755 S.W.2d 459, 462 (Tenn. Ct. App. 1988)).  "The cardinal rule in construction of all wills is that the court shall seek to discover the intention of the testator and give effect to it unless it contravenes some rule of law or public policy." *Fisher v. Malmo*, 650 S.W.2d 43, 46 (Tenn. Ct. App. 1983); *see also Briggs v. Briggs*, 950 S.W.2d 710, 712 (Tenn. Ct. App. 1997); *Presley v. Hanks*, 782 S.W.2d 482, 487 (Tenn. Ct. App. 1989).  In seeking out the testator's intent, we have several rules of construction to aid us in that effort.  However, all rules of construction are merely aids in ascertaining the intent of the testator. *Sands v. Fly*, 200 Tenn. 414, 292 S.W.2d 706, 710 (1956).

In gleaning the testator's intent, we look to the entire will, including any codicil. *Stickley v. Carmichael*, 850 S.W.2d 127, 132 (Tenn. 1992); *Presley*, 782 S.W.2d at 488.  The testator's intent is to be determined from the particular words used in the will itself, *Stickley*, 850 S.W.2d at 132, and not from what it is supposed the testator intended. *Briggs*, 950 S.W.2d at 712; *Presley*, 782 S.W.2d at 488; *Fisher*, 650 S.W.2d at 46.  "Where the will to be construed was drafted by the testator himself who was not versed in the law and without legal assistance the court in arriving at the intention of the testator should construe the language of the will with liberality to effectuate

what appears to be the testamentary purpose." *Davis v. Anthony*, 53 Tenn. App. 495, 384 S.W.2d 60, 62 (1964) (citations omitted). We are also guided by an additional principle of construction; when a decedent undertakes to make a will, we must presume that the decedent intended to die testate, and we must seek to construe the will, where possible, as including all of the testator's property at death. *Davis*, 384 S.W.2d at 62 (citations omitted). The legislature of this state has provided as follows:

> A will shall be construed, in reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, and shall convey all the real estate belonging to the testator, or in which the testator had any interest at the testator's decease, unless a contrary intention appears by its words in context.

Tenn. Code Ann. § 32-3-101 (2003). Since this statute is in derogation of the common law, it must be strictly construed. *Davis v. Price*, 189 Tenn. 555, 226 S.W.2d 290, 292 (1949); *see also McDonald v. Ledford*, 140 Tenn. 471, 205 S.W. 312, 313 (1917).

* * *

"Every word used by a testator in a will is presumed to have some meaning." *In re Estate of Jackson*, 793 S.W.2d 259, 261 (Tenn. Ct. App. 1990) (citing *Third Nat'l Bank v. Stevens*, 755 S.W.2d 459 (Tenn. Ct. App. 1988)).

* * *

"[F]or the testator's will to be given effect, there must be some evidence of that intent: 'We cannot determine the devolution of estates based upon the mere surmise as to the testator's intention.'" *In re Walker*, 849 S.W.2d 766, 768 (Tenn. 1993) (quoting *Pinkerton v. Turman*, 196 Tenn. 448, 268 S.W.2d 347, 350 (1954)).

*In re Estate of Kowalski*, 574 S.W.3d 872, 876-77 (Tenn. Ct. App. 2018) (quoting *In re Estate of Milam*, 181 S.W.3d at 353-54).

This Court has observed that "in cases concerning a will drafted by a layperson, the words employed by the testator often lack the specificity to engender a clear intent." *In re Estate of Dunn*, No. W2023-00686-COA-R3-CV, 2024 WL 2857854, at *3 (Tenn. Ct. App. June 6, 2024). In this case, the trial court found patent ambiguity in the Will. Although

"parol evidence is inadmissible to add to, vary, or contradict the language used in a will," it is "admissible, when necessary, both to place the Court in a knowledge of the condition and circumstances surrounding the testator when he executed his will, and to resolve uncertainties or ambiguities in the will as to the testator's intentions." *Treanor v. Treanor*, 152 S.W.2d 1038, 1041 (Tenn. Ct. App. 1941). "[W]e resolve ambiguities in favor of an absolute estate and against a limitation." *In re Estate of Dunn*, 2024 WL 2857854, at *3 (citing *Weiss v. Broadway Nat'l Bank*, 322 S.W.2d 427, 431 (Tenn. 1959)).

## A. Decedent's Intent

In its construction of the Will, the trial court emphasized the presumption against intestacy in Tennessee. *See Estate of Milam*, 181 S.W.3d at 353 ("[W]hen a decedent undertakes to make a will, we must presume that the decedent intended to die testate, and we must seek to construe the will, where possible, as including all of the testator's property at death."). The trial court also noted that because Decedent drafted the Will himself and was not an attorney, it was necessary "to give a liberal construction given the context of [the Will's] drafting in order to try to get to the intent of the testator, because that's what counts." *See Estate of Milam*, 181 S.W.3d at 353 ("Where the will to be construed was drafted by the testator himself who was not versed in the law and without legal assistance the court in arriving at the intention of the testator should construe the language of the will with liberality to effectuate what appears to be the testamentary purpose." (quoting *Davis v. Anthony*, 384 S.W.2d 60, 62 (1964))).

The trial court determined that the Will contained a patent ambiguity due to the contrast between sections A5 and A6, taken together, and section A14. To reiterate, these sections provided:

[Section A5]
My daughter Kendall W. Brown is to receive my property and furnishings of the . . . Magnolia Rd., Florida property.

[Section A6]
My son G.K. Walls is to receive all other properties and all other items and furnishings as well as items that are contained in the utility buildings in all places as well as from the utility building at . . . Pelican Ln., Flagler Bch., FL. He should distribute or liquidate these items as suggested by joint decision of the executors/trustees.

* * *

- 11 -

[Section A14]
The assets of real property and other tangible assets I wish to be held in trust for investments in a manufacturing, property rental, or distribution venture preferably one that is not of a retail nature (excluding restaurant based operations). My certificates of deposit are to be held in a separate trust and managed so as to return the greatest yield while being adequately insured within the FDIC guidelines; then, my trustee of any such trusts must limit purchase of any stocks to commodity stocks or those listed on the DOW. The balance to be kept in CD's fully insured at a FDIC insured bank.

In contrasting these sections, the trial court found:

A14 is not a donative directive, and therefore the Court cannot hold that to be a particularly controlling provision relative to the existence of a trust that doesn't exist to begin with. Since that does not – although that may indicate an intent, it is not a gift bequest, but, rather, a wish.

When I compare to that, then I compare and contrast, and what is particularly important is when I look at A5 and A6, because my biggest predicament was what I do with A14 versus A5 and A6. Although there are extraordinarily challenging provisions, I think it's well established that the provisions with regard to a trust fail under § 35-15-402. I'm going to determine that he did not intend to die intestate, he intended for this will, such as this Court can construe it, to be his directive. And the Court finds that in this particular case those provisions that identify donative intent and, in fact, conveyance are the paragraphs or provisions in Sections A5 and A6.

I know there's discussions concerning, yeah, properties, items, furnishings. This Court interprets Section A5 to receive my property and furnishings at . . . Magnolia Road as whatever that property and any furnishings thereon, therein, et cetera.

Similarly, A6, my son, G.K. Walls, is to receive all other properties, I'm interpreting that as real properties, and all other items and furnishings. Why he put items, because one considers a furnishing, as I see this, as what would go in a house, and items, he's thinking about the South Pittsburg [Marion County] property with . . . vehicles and other tools and equipment, as well as items contained in the utility building, et cetera.

So I find, and it's not a controlling versus non-controlling, this finds that donative intent was articulated in Paragraphs 5 and 6, that's what avoids

intestacy in this particular case and most clearly articulates the testator's intent.

Executor asserts that the trial court erred by identifying provisions of the Will with donative intent to the exclusion of other provisions. Respectfully, we find this to be a mischaracterization of the trial court's analysis. Executor insists that Decedent's references to a trust or trustee in his Will, which she lists as "*seven (7) separate instructions* associated with the management of a trust and *ten (10) separate references* to it," meant that his overall intent was to devise title to his real property to a trust. The trial court addressed this argument, finding that because it was "well established that the [Will] provisions with regard to a trust fail[ed]," Decedent's principal intent was evinced instead by his specific devises and bequests in sections A5 and A6. The court therefore determined that it could not find section A14 "controlling" and determined that A5 and A6 indicated "donative intent" while Decedent's references to a nonexistent trust represented a "wish" for how devises and bequests would be managed by beneficiaries.[2]

Executor concedes that Decedent failed to create a trust through the provisions in the Will and that she was unable to produce sufficient evidence of an existing trust. Pursuant to Tennessee Code Annotated § 35-15-402(a) (West July 1, 2025, to current), a trust is created only if:

(1)     The settlor has capacity to create a trust;

(2)     The settlor indicates an intention to create the trust;

(3)     The trust has a definite beneficiary or is:

   (A)     A charitable trust;

   (B)     A trust for the care of an animal, as provided in § 35-15-408; or

---

[2] Executor posits that because language indicating a wish or desire in a will may be interpreted as imperative, Decedent's "use of ordinarily precatory words" in sections A14 and A20 regarding a trust "is intended to be a mandate." As this Court has explained: "The natural significance of precatory words is not a trust, and the words 'request', 'desire', and the like will be construed as a request, not a command, unless the intention of the testator is clear that a command is intended." *Bishop v. Davis*, 585 S.W.2d 640, 644 (Tenn. Ct. App. 1979) (quoting R. PRITCHARD & H. PHILLIPS, PRITCHARD LAW OF WILLS & ADMINISTRATION OF ESTATES, § 455 (3d ed. 1955)). We do not find that Decedent's language referencing a trust is imperative such that it defeats his presumptive intent to die testate. *See Estate of Milam*, 181 S.W.3d at 353.

    (C)    A trust for a noncharitable purpose, as provided in § 35-15-409;

(4)    The trustee has duties to perform; and

(5)    The same person is not the sole trustee and sole beneficiary.

Despite provisions in the Will referencing one or more trusts, such as section A20 stating: "One trust is to be maintained for real property and others for CD's and other assets," Decedent did not identify a definite beneficiary of a trust or clarify the identity of trustees. *See* Tenn. Code Ann. § 35-15-402(a)(3), (5). Additionally, it is undisputed that the handwritten notes found by Executor, which mention a trust, were inadequate to establish a trust. During trial, Executor acknowledged that the handwritten notes were "the closest thing we have to the trust."

Executor maintains that the presence of the word, "trust," in the plaintiff's name in the style of the Cheeburger Lawsuit (*George Kenneth Walls, Trustee f/b/a George W. Walls, Jr. Trust 4C Sons, LLC d/b/a Cheeburger Cheeburger v. George Kenneth Walls*) indicated that Decedent believed that a trust existed, at least concerning the Market Street Property. Again, Executor acknowledges that she presented no documentation of a trust, but she argues that Decedent's naming of a trust as the plaintiff in the lawsuit was evidence that he believed there to be a trust and that he intended to devise real property to the trust in his Will. During trial in the instant action, Mr. Walls presented the 1972 deed conveying the Market Street Property to Decedent as "George W. Walls, Jr., Trustee." Mr. Walls also presented a 2019 order entered in the Cheeburger Lawsuit substituting Mr. Walls as the plaintiff in place of Decedent and listing Mr. Walls as "successor trustee of the George W. Walls, Jr. Trust." When questioned regarding whether Decedent had ever mentioned why he had taken title to the Market Street Property as a "Trustee," Mr. Walls stated that his father had said "[a]s a legal protection." Mr. Walls testified that when the Cheeburger Lawsuit settled, there was still no actual trust in place. Given the absence of any documentation confirming the existence of a "George W. Walls, Jr. Trust," we determine that this extrinsic evidence does not support Executor's postulate that Decedent intended to devise real property to a trust.

Our Supreme Court has explained:

> Another rule of construction is that when a controlling or predominate purpose of the testator is expressed, it is the duty of the court to effectuate that purpose, and to construe all subsidiary clauses so as to bring them into subordination to such purpose. The language of a single sentence is not to control as against the evident purpose and intent shown by the whole will.

- 14 -

*Moore v. Neely*, 370 S.W.2d 537, 540 (Tenn. 1963). Executor argues that the controlling or predominate purpose expressed in the Will regarding real property was to devise it to a trust. She asserts that if A5 and A6 referred to real property, Decedent "would have frustrated the main scheme of his will by giving away the real property he intended to put in trust." However, the trial court found that Decedent's controlling or predominate purpose concerning real property was to devise it as in sections A5 and A6.

Contrary to Executor's argument, we do not find that the trial court ignored Decedent's references to a trust in the Will. Instead, the trial court gave effect to what it determined to be Decedent's intent, including Decedent's presumed intent to dispose of his entire estate through his Will. *See Estate of Milam*, 181 S.W.3d at 353. We determine that the trial court properly found that sections A5 and A6 of the Will set forth Decedent's donative intent concerning real property and that this intent was not defeated by Decedent's references to nonexistent trusts.

### B. Effect of Section A6

Executor asserts that "the four corners of the will, when harmonized with A5 and A6 such that meaning is given to every word of the will, tell us that [Decedent] did not intend to devise any real property other than to a trust." According to Executor, although the trial court found that through section A5, Decedent had devised to Executor the real property located on Magnolia Road in Florida ("Magnolia Road Property") and that through section A6, he had devised to Mr. Walls his remaining real property, Decedent intended to devise real property <u>only</u> to a trust. Executor advances that because no trust was established, all of Decedent's real property should pass by intestacy equally to his heirs, who are his two children, namely Executor and Mr. Walls. *See* Tenn. Code Ann. § 31-2-104 (West October 1, 2007, to current) (providing the order of intestate succession); *In re Estate of Kowalski*, 574 S.W.3d at 878 ("Where there is no residuary clause, property not specifically bequeathed in the will passes as if the deceased died intestate." (quoting *In re Estate of Jackson*, 793 S.W.2d 259, 260 (Tenn. Ct. App. 1990))). Executor maintains that the Will does not contain a residuary clause applicable to real property.

At the outset, we address the trial court's apparent finding that both section A2 and section A6 constituted residual clauses. In the court's bench ruling, which was incorporated into the October 2024 order, the court stated:

> Do I have a residuary clause in Section A2? Yeah. Do I have what appears
> to be a residuary clause in Section A6? Yep.

The court then proceeded to compare sections A5 and A6 with section A14. The court did not return to the question of whether the Will contained two residuary clauses. It is not clear from the court's order whether the court ultimately determined section A6 to be a residuary clause or simply determined that sections A5 and A6 operated together to devise all of Decedent's real property.

A residuary clause is defined as "[a] testamentary clause that disposes of any estate property remaining after the satisfaction of all other gifts." *Residuary Clause*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also In re Milam*, 181 S.W.3d at 354 (determining that a will provision did not "operate as a residuary clause" when it did not "dispose of that portion of the Decedent's estate not specifically devised in her will").

Section A2 provided:

I devise and bequest the rest and residue of all my worldly goods to be distributed by my executor in an equitable manner among my issue or blood line.

We determine Section A2 to be the residuary clause in the Will through which Decedent intended to bequeath any "worldly goods" that he had not disposed of specifically through other provisions.

If Decedent had not devised all of his real property elsewhere in the Will, Executor would be correct that any remaining real property would pass by intestacy because the phrase, "worldly goods," in Section A2 does not include real property. *See* Tenn. Code Ann § 47-18-103(12) (West January 1, 2023, to current) ("'Goods' means any tangible chattels leased, bought, or otherwise obtained for use by an individual primarily for personal, family, or household purposes or a franchise, distributorship agreement, or similar business opportunity[.]").[3] However, because we determine that Decedent devised all of his real property through operation of sections A5 and A6 together, we conclude that no real property will remain after the satisfaction of all gifts set forth in the Will. To the extent that the trial court found section A6 to be a residual clause, we determine this to be harmless error because the court properly found that Decedent devised all of his real property through sections A5 and A6.

---

[3] Although Executor acknowledges that the reference in section A2 to "worldly goods" does not indicate that Decedent intended for real property to pass under this section, she proffers an alternative argument that Decedent may not have understood the legal definition of "goods" and that Decedent therefore may have intended to convey all he owned that was not specifically named in the Will, including his real property, under section A2 to be distributed by Executor. Considering the analysis of sections A5 and A6 that follow, we are not persuaded by this alternative argument.

- 16 -

In section A5 of the Will, Decedent stated that Executor was "to receive my property and furnishings of the [Magnolia Road Property]." In section A6, Decedent stated that Mr. Walls was "to receive <u>all other properties</u> and all other items and furnishings" (emphasis added). Because the trial court interpreted the word, "property," in A5 to mean the Magnolia Road Property, the court interpreted the phrase, "all other properties," in A6 to mean Decedent's remaining real properties: the Market Street Property and the Marion County Property.

Executor urges that Decedent's statement in A5 meant that all of Decedent's personal property and furnishings located on the Magnolia Road Property were to be bequeathed to Executor but not the real property itself. She then argues that when Decedent stated in section A6 that Mr. Walls was "to receive all other properties and all other items and furnishings," he was referring to other personal property only and not to real property. Executor asserts that the trial court "completely ignored" that in other sections of the Will, Decedent had described "property" as "personal," "real," or "tangible," and left the term "ambiguous" only in sections A5 and A6.

However, the trial court expressly examined section A14, wherein Decedent stated that he "wish[ed]" for "[t]he assets of real property and other tangible assets" "to be held in trust." In section A14, Decedent listed the types of property that he wished to have held in trust, as he did in section A20, wherein he stated: "One trust to be maintained for real property and others for CD's and other assets." Decedent created a similar list in section A10 when he provided for successor joint executors "over such properties, assets, and personal property that is defined in this document." Notably, in the section A10 list, "properties" was listed separately from "assets" and "personal property." We determine that this use of "properties" comports with the trial court's interpretation of "other properties" in section A6 as other real properties remaining after the Magnolia Road Property had been devised to Executor in section A5.

In support of her argument, Executor invokes the rule of *ejusdem generis*. As this Court has explained:

> "The rule of *ejusdem generis* [is] a rule of construction that is adhered to by Tennessee courts." *In re Est. of Jackson*, 793 S.W.2d 259, 261 (Tenn. Ct. App. 1990). The rule provides that "where there has been an enumeration of particular items followed by a sweeping clause comprising all other things under a general description, the scope of the sweeping clause is restricted to things within the description of the same kind with the items enumerated." *Id.*

- 17 -

*Bellar v. Eatherly*, No. M2022-00403-COA-R3-CV, 2023 WL 2344287, at *5 (Tenn. Ct. App. Mar. 3, 2023) (additional internal citations omitted).

Section A6 provided that Mr. Walls was "to receive all other properties and all other items and furnishings as well as items that are contained in the utility buildings in all places as well as from the utility building at . . . Pelican Ln., Flagler Bch., FL." The "sweeping clause," as Executor construes it here, would be "all other properties." Thus, Decedent placed the enumeration of particular items ("all other items that are contained in the utility buildings in all places as well as from the utility building") after the sweeping clause, the inverse of what occurs when the rule of *ejusdem generis* applies. We do not find that the rule limits interpretation of "all other properties" to only those items that follow the phrase. Instead, we agree with the trial court's determination that the phrase, "all other properties," follows the devise in section A5 of the Magnolia Road Property and refers to Decedent's "other," or remaining, real properties. Moreover, the rule of *ejusdem generis* "does not apply if the intention of the testator is manifested to the contrary, as where an intestacy would otherwise be created . . . ." *See Deavers v. Deavers*, 457 S.W.2d 618, 621 (Tenn. Ct. App. 1970).

In further support of her contention that section A6 does not operate to devise Decedent's "other" real properties, Executor argues that (1) Decedent's use of the phrase, "to receive," in sections A5 and A6 indicated that he intended for Executor and Mr. Walls to act as receivers of the respective real properties in trust; (2) Decedent's instructions regarding disposition of vehicles in section A7 would be rendered ineffective because the vehicles were located on the Marion County Property; and (3) the trial court failed to address the effect of the last sentence of section A6. We find these remaining arguments unavailing and will address each in turn.

First, Executor's interpretation of the phrase, "to receive," is strained inasmuch as the phrase is not used in conjunction with a trustee receiving property in trust. Second, the vehicles were "items" located on the Marion County Property, and therefore Executor makes a valid point that in section A7, Decedent gave away one vehicle to his mother (stating that she was "to have first choice of one vehicle") and one vehicle to Executor (stating that she was "to have second choice of any motor vehicle") when under the language in section A6, all of the vehicles would already have been bequeathed to Mr. Walls. However, we do not find that this discrepancy overrides the presumption that Decedent intended to die testate. In the last two sentences of section A7, Decedent stated:

> The balance of the vehicles can be sold at fair market value at a time when the stock market Dow is at least at the 14000 level. The receipts from such sales are to be put into a liquidity fund(s) of the trust.

- 18 -

The phrase, "can be sold," indicates an instruction for what could be done with the balance of the vehicles, complete with guidance on the acceptable level of the "stock market Dow" for the time of sale. The last sentence includes one of Decedent's many references to a trust that did not exist. The trial court found that Decedent's trust references evinced a "wish" that his heirs would place assets in trust, and we agree.

Finally, the last sentence of section A6 states:

He [Mr. Walls] should distribute or liquidate these items as suggested by joint decision of the executors/trustees.

As Executor notes, the trial court did not directly address the effect of this sentence. However, we determine that it does not change the effect of section A6 or the disposition of the real property. The sentence follows the statement that Mr. Walls "is to receive all other properties and all other items and furnishings as well as items that are contained in the utility buildings in all places as well as from the utility building at . . . Flagler Bch, FL." It is not entirely clear whether "these items" in the last sentence refers to "all other <u>items</u> and furnishing," "<u>items</u> that are contained in the utility buildings," or both. However, it would certainly be a strained interpretation to say that "these items" referred to "properties." In any case, the sentence proffers an instruction to Mr. Walls regarding how to "distribute or liquidate" the items. It does not change the disposition of the "other properties."

The trial court was guided by the presumption that Decedent "intended to die testate," and the court properly construed the language of the Will "'with liberality to effectuate what appears to be the testamentary purpose'" where Decedent "'was not versed in the law.'" *See In re Estate of Milam*, 181 S.W.3d at 353 (quoting *Davis v. Anthony*, 384 S.W.2d 60, 62 (Tenn. Ct. App. 1964)). Considering the entire Will and all circumstances in the record, we conclude that the trial court correctly identified Decedent's intent to devise all of his real property through sections A5 and A6 of the Will.[4]

V. Attorney's Fees on Appeal

Executor has requested clarification regarding whether the trial court retains subject matter jurisdiction to determine if Executor is entitled to attorney's fees and costs incurred on appeal of this interim order in a probate case or whether this Court should decide the

---

[4] On appeal, Mr. Walls argues that Executor's issues regarding construction of the Will are barred by the doctrines of election and equitable estoppel. Executor responds that Mr. Walls waived these arguments by failing to raise them in the trial court. Given our conclusion that the trial court properly interpreted the Will, we determine Mr. Walls's arguments concerning election and equitable estoppel to be pretermitted as moot.

issue. Executor filed two motions for attorney's fees and costs incurred during the trial court proceedings, and by agreed order, the trial court referred those motions to the clerk and master. Mr. Walls posits that the trial court should adjudicate the issue of attorney's fees on appeal and asserts that Executor is not entitled to such an award.

In questioning whether this Court has the authority to award attorney's fees on appeal, Executor cites this Court's decision in *Chaille v. Warren*, 635 S.W.2d 700, 701 (Tenn. Ct. App. 1982) ("*Chaille I*"), a probate case involving interpretation of a will and the trial court's "division of attorneys fees between the attorneys representing plaintiffs and the attorneys representing defendants." The *Chaille I* Court affirmed the trial court's division of attorney's fees and remanded to the trial court for consideration of the defendants' request for attorney's fees on appeal. *Id.* at 703 ("We are of the opinion that, on remand, the Chancellor should consider whether additional attorneys fees should be awarded to defendants' attorneys for their services regarding this appeal and, if so, the amount of such fee."). Following remand, the case came before this Court again in *Chaille v. Warren*, 689 S.W.2d 173 (Tenn. Ct. App. 1985) ("*Chaille II*"). In *Chaille II*, the defendants' counsel requested that an award of attorney's fees for services rendered during the second appeal be granted from funds that had been awarded by the trial court to plaintiffs' counsel for attorney's fees during the first appeal. *Chaille II*, 689 S.W.2d at 180. The *Chaille II* Court remanded the issue to the trial court, stating: "As this Court held in [*Chaille I*], the trial court is the proper forum for the determination of whether attorneys fees should be awarded and their amount." *Id.* Additionally, the *Chaille II* Court stated that "the only proper time to request fees for legal services performed on appeal would be on the remand of the case." *Id.* at 178.

In *Killingsworth v. Ted Russell Ford, Inc.*, 205 S.W.3d 406, 411 (Tenn. 2006), our Supreme Court considered when a plaintiff should request reasonable attorney's fees on appeal in a case involving the Tennessee Consumer Protection Act ("TCPA"). The appellant had relied on the above holding in *Chaille II*, and the Supreme Court found the holding inapposite, stating:

> In *Chaille*, the intermediate appellate court was not construing the TCPA. Rather, the court addressed the effect of Tennessee Code Annotated section 29-27-121 permitting an award of attorney's fees from the common fund created by the sale of partitioned land. All issues related to the partition sale, including the payment of costs and fees, are statutorily addressed to the trial court. Further, the court was not considering the impact of Tennessee Rule of Appellate Procedure 27(a).

*Killingsworth*, 205 S.W.3d at 411. The *Killingsworth* Court held that "a plaintiff seeking to recover reasonable attorney's fees generated during an appeal of a case brought under

the TCPA must set forth his or her intention to do so in his or her appellate pleadings." *Id.* Our Supreme Court has subsequently held in a case not involving the TCPA that "*Killingsworth* establishes that all parties, whether appellants or appellees, must present a request for appellate attorney's fees to the appellate court rather than the trial court." *Charles v. McQueen*, 693 S.W.3d 262, 284 (Tenn. 2024) (explaining differing requirements for appellants versus appellees) (citing *Killingsworth*, 205 S.W.3d at 410-11).

Thus, Executor has properly presented her request for attorney's fees and expenses on appeal as an issue before this Court. In answer to Executor's specific question regarding subject matter jurisdiction, we note that this Court does have "the authority to award attorney's fees on appeal" in a case involving will construction. *See In re Estate of Greenamyre*, 219 S.W.3d 877, 887 (Tenn. Ct. App. 2005).

As this Court has explained:

> Tennessee follows the American Rule with regard to attorney's fees. Under the American Rule, each litigant must wage its own fight for justice with its own resources, James H. Cheek III, Note, *Attorney's Fees: Where Shall the Ultimate Burden Lie*, 20 Vand. L. Rev. 1216, 1221 (1967), and litigants are responsible for their own attorney's fees no matter "however wrongful may have been the suit, or however groundless the defense." *Corinth Bank & Trust Co. v. Security Nat'l Bank*, 148 Tenn. 136, 154, 252 S.W. 1001, 1006 (1923). Accordingly, in the absence of a statute, contract, or equitable rule requiring otherwise, attorneys must generally look to their own clients for their fees.

> Will construction cases represent a well-known exception to the American Rule. When a will contains an ambiguity, litigation may be to the mutual benefit of the estate and the beneficiaries. *Harris v. Bittikofer*, 562 S.W.2d 815, 817-18 (Tenn. 1978). If an ambiguity in a will requires litigation to resolve it, the expenses of the litigation, including the parties' attorney's fees may be charged against the estate of the testator who was responsible for the ambiguity. *Marshall v. First Nat'l Bank of Lewisburg*, 622 S.W.2d 558, 560 (Tenn. Ct. App. 1981). Thus, the courts frequently require a testator's estate to pay the attorney's fees of parties named as defendants in will construction cases filed by executors. *See, e.g.*, *Leaver v. McBride*, 506 S.W.2d 141, 145 (Tenn. 1974); *Boulton v. Cochran*, 41 Tenn. App. 43, 64, 292 S.W.2d 511, 520 (1954). However, the courts shift the burden of paying attorney's fees from the client to the estate only after they are satisfied that the purpose of the litigation was to benefit the estate. *First*

*Am. Nat'l Bank v. Charlton*, 557 S.W.2d 500, 501 (Tenn.1977); *Pierce v. Tharp*, 224 Tenn. 328, 338, 455 S.W.2d 145, 149 (1970).

*Id.* at 884-85 (additional internal citations omitted). As the *Greenamyre* Court observed, "[d]eciding whether a party's attorney's fees should be paid by the estate does not necessarily hinge on the success of the party's claims" because "[t]he controlling question is whether the entire estate benefitted from the efforts of the party's lawyer." *Id.* at 886.

Upon careful consideration in this case, we deny Executor's request for an award of attorney's fees and expenses on appeal. We have affirmed the trial court's interpretation of the Will and determined that the court carefully considered the construction issues raised by Executor. We find that this appeal was primarily intended to benefit Executor. *See, e.g.*, *id.* at 887 (denying the appellant's request for attorney's fees on appeal upon determining that the "trial court's order properly addressed the ademption by extinction issue raised by [the appellant]" and that the "appeal was primarily intended to benefit [the appellant]").

## VI. Solvency of the Estate

Having affirmed the trial court's interpretation of the Will, we now address Executor's request that any transfer of real property be delayed until the trial court determines outstanding matters of the Estate's solvency and the reasonableness of Executor's requested legal fees, legal expenses, and expenses as executor. Mr. Walls proffers that "[a]ny ruling on the sale of real estate would be premature" because Executor's motion to bring real estate into the Estate is still pending before the trial court. He acknowledges that Executor's requests for expenses and attorney's fees incurred during the trial court proceedings are still to be decided by the trial court as well.

In its October 2024 order, the trial court stated that the order was "without prejudice to any pending motion to subject such [real] property to any unpaid debts of the estate as determined by the accounting presently before the Clerk and Master in this case." The trial court's agreed order staying execution of the judgment pending appeal provided:

That George K. Walls is prohibited from encumbering, mortgaging, selling or transferring ownership of the Market Street and South Pittsburg [Marion County] properties during the pendency of the appeal.

That as a condition of this order George K. Walls shall be allowed to continue deriving rental income from the Market Street property through its current agreement with Republic Parking, thereby preserving the income stream and avoiding harm to him during the appellate process.

That should George K. Walls need to encumber the Market Street property to borrow money to pay the pending lien filed against this property by the City of Chattanooga or for any other legitimate expenses necessary to allow necessary upkeep of the property or to avoid damage or waste to the property he shall be authorized to do so upon notice to the Executor and upon application to the court for approval of any loan as to the amount and terms of said loan.

(Paragraph numbering omitted.)

We determine that no transfer of real property should occur until pending motions and the issue of the Estate's solvency are adjudicated by the trial court. *See* Tenn. Code Ann. § 30-2-317 (West July 1, 2014, to current) (setting forth the priority of claims or demands against an estate). Therefore, we modify the trial court's October 2024 order to (1) stay transfer of the subject real properties until pending motions and the issue of the Estate's solvency have been resolved and (2) extend the conditions regarding the Market Street Property provided in the agreed order staying execution of the judgment until such resolution has been accomplished.

## VII. Conclusion

For the foregoing reasons, we modify the trial court's judgment to (1) stay transfer of the subject real properties until pending motions and the issue of the Estate's solvency have been resolved and (2) extend the conditions regarding the Market Street Property provided in the agreed order staying execution of the judgment until such resolution has been accomplished. We affirm the trial court's judgment in all other respects. We deny Executor's request for an award of reasonable attorney's fees and expenses on appeal. We remand this case to the trial court for enforcement of the trial court's judgment as modified, collection of costs below, and further proceedings consistent with this Opinion. Costs on appeal are assessed to the appellant, Kendall Walls Brown, in her capacity as Executor of the Estate of George W. Walls, Jr.

s/ Thomas R. Frierson, II_____
THOMAS R. FRIERSON, II, JUDGE